# Richmond.

## LANDERS V. COMMONWEALTH.

### November 20, 1919.

1. PENALTIES AND FORFEITURES—*Power of the Legislature—Due Process of Law—Forfeiture of Vehicle Under Prohibition Act 1918.*—The legislature has ample power to provide for the forfeiture of property employed in violating the laws of the State, whether the owner thereof has guilty knowledge of its use or not, and the procedure for declaring and enforcing the forfeiture provided for by the prohibition act of 1918 (laws 1918, ch. 388), constitutes due process, and is all that is necessary to give the owner of an automobile a fair trial on the merits.

2. INTOXICATING LIQUORS—*Forfeiture Clause of Acts 1918, Ch. 388, Section 57—Construction.*—The forfeiture clause of Acts 1918, ch. 388, section 57, is highly penal in its nature. In the instant case, as the rights of the plaintiff in error could be ascertained without prejudice to the Commonwealth, by a fair and reasonable construction of the statute, and of this she could not complain, it was not necessary to determine the effect of section 58 of the prohibition act of 1918, ch. 388, declaring that the entire act "and all of its provisions shall be liberally construed to effect these objects."

3. INTOXICATING LIQUORS—*Forfeiture of Automobile—Proceedings in Rem.*—A proceeding to forfeit a vehicle under the prohibition act of 1918, ch. 388, section 57, is *in rem* against the vehicle regardless of the ignorance of the owner that his vehicle was being put to an illegal use by another.

4. INTOXICATING LIQUORS—*Forfeiture of Automobile—Innocence of Owner—Test of Liability—Case at Bar.*—On an information to enforce a forfeiture of an automobile used in violating the prohibition law of the State, the defense was that the owner of the car was an innocent owner; that she did not in any way violate the prohibition act of 1918 (laws 1918, ch. 388), nor knowingly aid or abet any one in doing so; that she was entirely ignorant of the illegal use to which the car was put by her son, and hence was not within the purview of the provisions of the act.

*Held:* That the innocence of the owner of any knowledge of
the illegal use to which her vehicle was put was no de-
fense to the forfeiture proceeding. The test of liability is.
the guilty knowledge of the "person in charge."

5. INTOXICATING LIQUORS—*Forfeiture of Automobile—Exemption*
*of Innocent Owner.*—An exemption from forfeiture for the
absent innocent owner, under section 57, Acts 1918, ch. 388,
cannot be inferred because of the provision of clause (d) that
it shall not "be a ground of defense that such person by
whom said property was used in violation of law has not.
been convicted of such violation." The legislature is pre-
sumed to have been familiar with the subject with which
it was dealing, and, knowing that conviction was in some
cases made a prerequisite to forfeiture, doubtless inserted the
provision in order to avoid any doubt or uncertainly on the
subject. But however this may be, no exemption from for-
feiture can be inferred from the provision.

6. INTOXICATING LIQUORS—*Forfeiture of Vehicle—Procedure—Ser-*
*vice of Process.*—As a proceeding under section 57, ch. 388,
prohibition act of 1918, is a proceeding *in rem*, personal
service of notice is not necessary to .its validity. The at-
torney for the Commonwealth is required to file an informa-
tion "against such vehicle," and the clerk is required to
"issue a notice" citing all persons concerned in interest to
appear on a specified day of the next term of the court after
the publication of such notice and show cause against the
forfeiture. The due publication of the notice is necessary to
confer jurisdiction upon the court to proceed with the for-
feiture. The seizure of the *res* brings it into the custody
of the court, but does not confer jurisdiction upon the court
to render a judgment *in rem*. But, with the vehicle in pos-
session under the seizure, .and the publication duly made,
the jurisdiction of the court is complete, and it may pro-
ceed with the forfeiture. Any one concerned in interest may
appear and make any valid defense he has.

7. INTOXICATING LIQUORS—*Forfeiture of Vehicle—Procedure—Ser-*
*vice of Process.*—Under Acts 1918, ch. 388, section 57, the
person in charge and the occupant of the vehicle seized must
be made actual parties to the proceeding. These were the
persons most likely to have an interest, and were also the
best medium of conveying notice of the proceedings to others
who might not see the citation published by the clerk. Hence
the provision of clause (d). This clause does not make
a distinction between a present and an absent owner of the
vehicle being forfeited, but is a difference in procedure only.
It simply requires that the two classes of persons, who are

known, shall be made actual parties to the proceeding before "any equity or interest" of theirs can be forfeited, leaving the procedure by order of publication to apply to absent owners, lienors, or other persons concerned in interest, who are, as a rule, unknown.

8. STATUTES—*Construction—Judicial Notice of Journals of the Legislature—Prohibition Act 1918, Ch. 388, Section 57.*—In the instant case, as the plaintiff in error had appealed to the Journal of the House of Delegates in support of her contention, without objection on the part of the Commonwealth, that as she, the owner of a vehicle illegally used to transport liquor, was innocent and ignorant of such illegal use, the vehicle was not subject to forfeiture under section 57, ch. 388 of the prohibition act of 1918, and as no question of the jurisdiction of the Supreme Court of Appeals was involved, that court assumed for the purposes of the case, without passing on the question or committing the court to that view, that it might take judicial notice of the contents of the Journal, treating the conduct of the Commonwealth as a waiver of any objection to the inspection of the Journal. The court had less hesitation in doing this than it would otherwise have had, because its conclusion was the same whether it did or did not take notice of the contents of the journal, namely, that the innocence of the owner and her ignorance of the illegal use of the vehicle was no defense to the proceeding.

Error to a judgment of the Circuit Court of Hanover county on an information to enforce forfeiture of an automobile under the Prohibition Act of 1918. Judgment of forfeiture. The owner of the automobile assigns error.

*Affirmed.*

The opinion states the case.

*H. M. Smith, Jr.*, and *McNeill & Bremner*, for the plaintiff in error.

*Jno. R. Saunders*, Attorney-General, *J. D. Hank, Jr.*, Assistant Attorney-General, *F. M. Chichester* and *Leon M. Bazile*, for the Commonwealth.

BURKS, J., delivered the opinion of the court.

This is an information to enforce a forfeiture of an automobile used in violating the prohibition law of the State. The case was submitted to the decision of the judge of the circuit court, without the intervention of a jury, upon an agreed statement of facts.  To a judgment of forfeiture, this writ of error was awarded.

The statement of facts agreed upon is as follows:

"It is agreed that the car in question, to-wit: Packard, Pennsylvania license tag No. 352787, described in the information, was seized in Hanover county by J. C. Chichester, sergeant of the city of Fredericksburg, on the 30th day of November, 1918, while in the possession of C. P. Landers, and that the said car was transporting ninety gallons of ardent spirits contrary to law.

"It is further agreed that the car in question was and is now, the property of the respondent, Mrs. W. M. Landers, and that the said W. M. Landers and no other person, had any interest or equity in said Packard automobile, and that the said respondent was not at the time of said transportation, or at any other time, *knowingly,* aiding or abetting the said C. P. Landers or any other person in the transportation of ardent spirits.

"It is further agreed that the said Mrs. W. M. Landers did buy the said automobile in Baltimore, Maryland, November 21, 1918, and did bring it to Richmond at that time, and did on or about the 26th day of November send said car back to Baltimore by C. P. Landers, her son, for the purpose of having certain promised repairs made to and on said automobile, and that on his return from this last trip C. P. Landers did transport ardent spirits as aforesaid."

The defense is that the owner of the car was "an innocent owner;" that she did not in any way violate the pro-

hibition act of 1918 (laws 1918, c. 388), nor knowingly aid or abet any one else in doing so, and that she was entirely ignorant of the illegal use to which her car was put by her son, and hence was not within the purview of the provisions of said act. Whether she was or not is dependent upon the proper interpretation and meaning of the act. The section under which the prosecution was had (section 57) is given in the margin, with letters set opposite the different paragraphs for convenience of reference. *

*(a) "When any officer charged with the enforcement of this law shall have reason to believe that ardent spirits are being transported in any wagon, boat, buggy, automobile or other vehicle, whether of like kind or not, contrary to law, he shall have the right and it shall be his duty to obtain a warrant to search such wagon, boat, buggy, automobile or other vehicle, and to seize any and all ardent spirits found therein which are being transported contrary to law. Whenever any ardent spirits which are being illegally transported, or are being transported for an illegal use, shall be seized by an officer of the State of Virginia, he shall also take possession of the vehicle and team, or automobile, boat or any other conveyance, other than a conveyance owned and used by a railroad, steamboat or express company, in which such liquor shall be found, and turn the same over to the sheriff of the county, or sergeant of the city in which such seizure shall be made, and such vehicle and team, automobile, boat or other conveyance shall be forfeited to the Commonwealth; and shall report the seizure to the attorney for the Commonwealth of the county or city in which such seizure shall be made, and to the commissioner in writing, and the attorney for the Commonwealth shall file any information in the name of the Commonwealth against such vehicle and team, automobile, boat or other conveyance by name or general designation. The information shall allege the seizure, and set forth in general terms the cause and grounds of forfeiture. It shall also pray that the property be condemned and sold and the proceeds be disposed of according to law, and that all persons· concerned in interest be cited to appear and show cause why the said property should not be condemned and sold to enforce the forfeiture, which information shall be sworn to by the attorney for the Commonwealth. Upon the filing of the information the clerk of the court shall forthwith issue a notice reciting briefly the filing of the information, the object thereof, the seizure of the property and citing all persons concerned in interest to appear on a specified day of the next term of the court, after the publication of said notice, and show cause why the prayer of the information for condemnation and sale should not be granted, a copy of which said notice shall be posted at the front door of the courthouse by the sheriff of the county or sergeant of the city and published by him in some newspaper, published in the county or city where such seizure is made. at least· five days before the return day of such notice, or if there be no newspaper published in the county or city, then in some newspaper having general circulation therein which said publication shall be sufficient service of notice on all parties concerned in interest.

(b) Provided that any person claiming an interest therein may give a forthcoming bond, in amount, double the value of the property so seized, conditioned that the vehicle and team, automobile, boat or other conveyance will be forthcoming in compliance with any order of the court having jurisdiction, and to pay all costs and fees incident to such seizure.

(c) Any person interested may appear and be made a party defendant and make defense to the information, which must be done by answer under oath, and· the proceedings shall conform as nearly

[1] It is conceded, in the outset, that the legislature had ample power to provide for the forfeiture of property employed in violating the laws of the State, whether the owner thereof has guilty knowledge of its use or not, and that the procedure for declaring and enforcing the forfeiture in the case at bar constitutes due process, and is all that is necessary to give the owner of the automobile a fair trial on the merits, but it is denied that the language of the statute is applicable to the facts of this case. It is unnecessary, therefore, to cite authorities to support the validity of the forfeiture clause of the statute in question. But see *Bogg's Case*, 76 Va. 989, and cases cited.

[2] Undoubtedly the forfeiture clause of the statute is highly penal in its nature, but we shall not expend time in discussing the rule of construction of criminal statutes and the effect of section 58 of the prohibition act, declaring that the entire act "and all of its provisions shall be liberally construed to effect these objects," so much relied on in

as practicable to chapter ninety-eight of the Code of Virginia of nineteen hundred and four.

(d) But, provided further, that any equity or interest of any person who is in charge of such vehicle and team, automobile, boat or other conveyance, or who is an occupant of the same at the time such seizure is made, shall be forfeited by making such person or persons a party defendant, and the possession of such ardent spirits in such vehicle, automobile, boat or other conveyance, shall be **prima facie** evidence that the person in charge knew such ardent spirits were in such vehicle, automobile, boat or other conveyance, nor shall it be a ground of defense that such person or persons by whom said property was used in violation of law has not been convicted of such violation. The said information shall be independent of any proceeding against such person or any other for violation of law.

(e) For every information filed under this section there shall be allowed to the attorney for the Commonwealth a fee of ten dollars, and to the officer making the seizure and arrest a fee of ten dollars, which shall be taxed as costs and collected in the manner provided by law.

(f) In every case the ardent spirits shall be turned over to the commissioner as herein provided.

(g) The officer making the seizure shall also arrest all persons in charge of or occupying such team or vehicle and report all arrests made to the attorney for the Commonwealth of the county or city in which such arrests shall be made, and to the commissioner in writing, and the attorney for the Commonwealth shall at once proceed against the person or persons arrested under the provisions of this act, who, upon conviction shall, be deemed guilty of a misdemeanor and shall be fined not less than fifty nor more than five hundred dollars, and confined in jail not less than one nor more than six months.

(h) Provided that the forfeiture provided for in this section shall not apply to the transportation in personal baggage of the quantity of ardent spirits permitted by this act." (Acts 1918, sec. 57, p. 612.)

the argument, as the rights of the plaintiff in error can be ascertained, without prejudice to the Commonwealth, by a fair and reasonable construction of the statute, and of this she cannot complain. For the purposes of this case, we deem it unnecessary to say more about the effect of section 58 aforesaid.

Section 57 of the act under which the information was filed, and which is copied in the margin, deals with two classes of offenders, (1) offending vehicles and (2) offending persons. The first four paragraphs marked, respectively, (a), (b), (c) and (d), relate wholly to the forfeiture of vehicles in which ardent spirits "are being illegally transported, or are being transported for an illegal use," while paragraph (g) relates to proceedings against "persons in charge of or occupying" such vehicles at the time of seizure. At present we are concerned with the interpretation of only that part of the statute which deals with the forfeiture of the vehicle.

[3, 4] The first four paragraphs of the section are so clearly · confined to proceedings to forfeit the vehicle alone, independent of any proceeding to subject the person in charge, occupant, or other person, to personal liability, as to leave no room for doubt that the proceeding is *in rem* against the vehicle regardless of the ignorance of the owner that his vehicle is being put to an illegal use by another. This is emphasized by the last sentence of paragraph (d) declaring that "the said information shall be independent of any proceeding against any such person or any other for violation of law." These paragraphs complete the forfeiture procedure of the section, except the provision of paragraph (h) "that the forfeiture provided for in this section shall not apply to the transportation in personal baggage of the quantity of ardent spirits permitted by this act."

The language of clause (a) is that the vehicle engaged in the illegal transportation of ardent spirits "shall be forfeited to the Commonwealth." The forfeiture is absolute and unqualified. The legislature was dealing with what it regarded as a great public evil, and the facilities for evading the law by the use of private vehicles, especially automobiles, were so great that it determined upon the very drastic means of forfeiting to the Commonwealth all private vehicles engaged in illegally transporting ardent spirits, or transporting them for an illegal purpose. It made ample provision for the owner of the vehicle to have a judicial investigation of the liability of his vehicle to forfeiture, but it is nowhere intimated in the statute, much less expressed, that the vehicle should be exempt from forfeiture if the owner was innocent of the use to which it was put. If such an exemption is in any way attached to the statute, the statute is practically a dead letter. The defense of "innocent owner" would defeat the very object of the statute, and no matter what rule of construction is adopted, it will not be presumed that the legislature enacted a statute aimed at a recognized evil, and put into it a provision that would, in its practical operation, defeat its purpose. The manifest purpose of the legislature was to make the vehicle so used the "offending instrument," and it is conceded that the legislature had ample power to so declare. The first clause (a) declares that the vehicle so illegally used "shall be forfeited to the Commonwealth." In providing for the mode of procedure and who shall be made parties thereto, this clause also declared "that all persons concerned in interest shall be cited to appear and show cause why the said property should not be condemned and sold to enforce the forfeiture. Clause (d) is as follows:

"But, provided further, that any equity or interest of any person who is in charge of such vehicle and team, automobile, boat or other conveyance, or who is an occupant of the same at the time such seizure is made, shall be forfeited by making such person or persons a party defendant, and the possession of such ardent spirits in such vehicle, automobile, boat or other conveyance, shall be *prima facie* evidence that the person in charge knew such ardent spirits were in such vehicle, automobile, boat or other conveyance, nor shall it be a ground of defense that such person or persons by whom said property was used in violation of law has not been convicted of such violation. The said information shall be independent of any proceeding against such person or any other for violation of law."

From these two clauses and from clause (c), which permits any person interested to appear and make defense, counsel for the owner deduces the conclusion that there are two classes of innocents who are excepted from the forfeiture clause, though actually present when the seizure is made, to-wit: the innocent person in charge and the innocent occupant, and that "where the forfeiture law itself mitigates in favor of some innocent classes, others also, unless clearly excluded, should be protected," and further "contends that it would be wholly unnecessary for a statute which was intended to forfeit the property of an innocent owner to make any provisions respecting what would be *prima facie* evidence against him and what would not be a ground of defense for him." It is unnecessary to consider whether or not the conclusion of counsel follows from his premises, for we cannot concede the correctness of his premises. A proper interpretation of the statute does not warrant the conclusion that innocence is "preserved as a defense to personal guilt and destroyed as a defense to property ownership." If the owner of the vehicle is driving

it himself while ardent spirits are being "illegally trans-
ported" therein "or are being transported for an illegal
use," the statute makes it a *prima facie* presumption that
he knew that the ardent spirits were in the vehicle, but if
he can rebut this presumption and show that he had no
such knowedge, neither he nor his vehicle is liable to the
penalties imposed by the statute. The statute under no
conditions exempts from its forfeiture the vehicle of an
owner who is present, and refuses to exempt under like
conditions the vehicle of an owner who is absent. This
would be the height of absurdity. The question involved
is not the innocence of the owner, but the guilt of the ve-
hicle; and if the owner is not a participant in the offense
its liability to forfeiture is dependent upon the guilty
knowledge of the person lawfully in charge of the vehicle.
In order to determine the liability of the vehicle to forfei-
ture, the statute makes no presumption against either the
owner or the occupant, but does against "the person in
charge." As to him it declares that the possession of such
ardent spirits in such vehicle * * * shall be *prima facie*
evidence that *"the person in charge"* knew that such ardent
spirits were there. It would rarely, if ever, occur that "the
person in charge" of a vehicle did not know of the presence
of ardent spirits in his vehicle, if such were the fact, and
hence the presumption against him. The presumption is
merely *prima facie,* and if innocent he could probably
readily establish the fact.

[4] We think it plain that the innocence of the owner
of any knowledge of the illegal use to which his vehicle is
put is no defense to the forfeiture proceeding, and that the
test of liability is the guilty knowledge of the "person in
charge." If "the person in charge" had any such knowl-
edge, the vehicle is liable although the owner was innocent
of its illegal use, otherwise not. It is true that the learned

judge of the trial court took the view that the clause relating to the *prima facie* presumption of guilty knowledge of "the person in charge" applied to the criminal liability of such person under clause (g) of section 57, and much of the argument of counsel for the owner is devoted to a refutation of that view, but that view leads to difficulties pointed out by counsel for the owner, and besides, we think is not the correct view.

[5, 6] Counsel for the plaintiff in error also seek to infer an exemption from forfeiture for the absent innocent owner because of the provision of clause (d) that it shall not "be a ground of defense that such person or persons by whom said property was used in violation of law has not been convicted of such violation." Forfeiture statutes are couched in varying language. In some of them, as in that construed in *Skinner* v. *Thomas*, 172 N. C. 98, 87 S. E. 976, L. R. A. 1916E, 338, cited for the plaintiff in error, the conviction of the defendant is made a pre-requisite to the forfeiture of his property. A similar statute was referred to, but the question of the necessity for the conviction of the defendant was not decided in *Boggs' Case, supra.* Under the prohibition act of 1916 (laws 1916, c. 146) the officer was directed to arrest "the person in charge" and seize the vehicle "in which such liquor shall be found," and upon conviction of "the person in charge," the vehicle was made liable for the fine imposed upon him and for the costs, unless the owner could clearly prove that he was ignorant of the purpose for which his vehicle was being used. There was no forfeiture of the vehicle, but it was simply made liable for the fine and costs aforesaid, under the conditions stated, and if the vehicle sold for more than enough to pay such fine and costs, the surplus was directed to be paid to the owner of the vehicle. But it was necessary to convict "the person in charge" before there was any

liability whatever on the vehicle.  If there was no convic-
tion of the person in charge, or even if there was such con-
viction, the owner could clearly show that he was ignorant
of the use to which his vehicle was being put, in either
event, there was no liability upon the vehicle.  The legis-
lature is presumed to have been familiar with the subject
with which it was dealing, and knowing that conviction
was in some cases made a prerequisite to forfeiture, doubt-
less inserted the provision in order to avoid any doubt or
uncertainty on the subject.  But however this may be, no
exemption from forfeiture can be inferred from the pro-
vision.

It is further insisted by counsel for the owner that the
effect of the judgment complained of is to permit innocent
persons who are in charge of, or occupants of the seized
vehicle, to recover their property, but to deny the same
right to all other equally innocent owners because they
happen not to be present at, but to be more remote from,
the scene of the seizure, and it is said that "no reason can
be imagined for preferring innocent occupants of the ve-
hicle and innocent persons in charge of it over other inno-
cent owners who have no association of any kind with the
vehicle at the time and place, and who have not even the
physical opportunity of detection and preventing the
crime."  These conclusions are drawn from the fact that
clause (a) requires the clerk to cite "all persons concerned
in interest," which, of course, would include the owner,
whether present or absent, and that clause (d) declares
that any equity or interest of the person in charge or occu-
pying the vehicle shall be forfeited "by making such person
or persons a party defendant" to the forfeiture proceed-
ings.  But the judgment has no such effect and the statute
makes no such distinction.  Clause (d) is not dealing with the
owner of the vehicle as such, but with the person in charge
of the vehicle, and the occupant thereof, whoever he may

be, whether owner or a third person. It must be borne in mind that this is a proceeding *in rem,* and that personal service of notice is not necessary to its validity. *Pennoyer* v. *Neff,* 95 U. S. 714, 727 (24 L. Ed. 565). The citation provided by clause (a) is a general citation of "all persons concerned in interest," and the method of service prescribed is by publication. The persons concerned in interest may be wholly unknown, but that is immaterial. If the publication is duly made the interest of such persons will be as completely forfeited as if their names were inserted in the publication. While this clause does not forbid personal service on any one known to have an interest in the vehicle, it does not require it. The procedure is against the vehicle and not against the owner or any other person. It is *in rem* wholly, and not *in personam.* It is not necessary to pass title that any person should be a party defendant and the clause does not require it. The attorney for the Commonwealth is required to file any information "against such vehicle" and the clerk is required to "issue a notice" * * * citing all persons concerned in interest to appear on a specified day of the next term of the court after the publication of such notice and show cause" against the forfeiture. The due publication of the notice is necessary to confer jurisdiction upon the court to proceed with the forfeiture. The seizure of the *res* brings it into the custody of the court, but does not confer jurisdiction upon the court to render a judgment *in rem.* It is just as essential in such case that there should be constructive notice as it is in personal judgments that there should be personal notice. The legislature may prescribe such form of notice as it sees fit. The manner of notification is immaterial, but the notification itself is indispensable. *Windsor* v. *McVeigh,* 93 U. S. 274, 23 L. Ed. 914. But, with the vehicle in possession under the seizure, and the publication duly made, the jurisdiction of the court is complete, and it may proceed

with the forfeiture. Of course, anyone concerned in interest may appear and make any valid defense he has. This is expressly provided for by clause (c), but that right exists even independently of that clause. *Windsor* v. *McVeigh, supra.*

[7] It seems manifest, however, that the legislature did not wish the State to take full advantage of its legal rights, but intended that the person in charge and the occupant should be made actual parties to the proceeding in order to forfeit "any equity or interest" they might have in the vehicle. These were the persons most likely to have an interest, and were also the best medium of conveying notice of the proceedings to others who might not see the citation published by the clerk. Hence the provision of clause (d). This clause does not make a distinction between a present and an absent owner of the vehicle being forfeited, but is a difference in procedure only. It simply requires that the two classes of persons, who are known, shall be made actual parties to the proceeding before "any equity or interest" of theirs can be forfeited, leaving the procedure by order of publication to apply to absent owners, lienors, or other persons concerned in interest, who are, as a rule, unknown.

It is not the service of process on the owner, nor the lack of it, nor the presence or absence of the owner at the seizure, which is to determine whether or not his interest in the vehicle is to be forfeited. This, as we have pointed out, is to be determined by the guilty knowledge of the "person in charge." We find nothing in either of the clauses, or in the two combined, to warrant the inference that there was any intention on the part of the legislature that the vehicle of the absent owner should be exempt from the plain forfeiture declared by clause (a).

[8] Finally, counsel for the plaintiff in error appeals to the history of section 57 of the act, and particularly para-

graph 3, or as we have marked it paragraph (c), with great earnestness, and apparently as conclusive evidence that the legislature never intended to forfeit the vehicle of an owner who was himself innocent, and who had no knowledge that his vehicle was being used for the illegal transportation of ardent spirits. The evidence relied upon to furnish this history is the Journal of the House of Delegates while the bill was before it. The journal was not introduced in evidence in the trial court, and this use of it was made for the first time in this court in the reply brief of the plaintiff in error. Counsel for the plaintiff in error cites a number of cases to show that where the language of a statute is ambiguous resort may be had to the history of its passage through the legislature, including that found in the journals of the two houses. But that is not the question presented for our consideration. The question here presented is, will this court take judicial notice of the contents of the Journal of the House of Delegates? Upon this question the authorities are not in harmony. *In re Howard County,* 15 Kan. 194; Black on Interpretation of Laws, 224.

In *Wayt* v. *Glasgow,* 106 Va. 110, 55 S. E. 536, after the case had been argued and submitted, in this court, counsel for the plaintiff in error sought to have the court pass upon the question whether or not the act of assembly under review had received on its passage the vote required by the Constitution. The court regarded the question as one of fact that ought to have been established or disproved by the journals, but they had not been put in evidence in the trial court, and this court refused to take judicial notice of their contents. In the course of the opinion it is said: "In this case, whether the act in question received on its passage the requisite constitutional vote—a question not suggested in the record—is a question of fact, which could only be determined upon evidence *aliunde.* True, the question might have been determined in the lower court, had

it been raised, upon record evidence, but like any other facts relied on, it had to be proved, and might have been proved or disproved by the introduction in evidence of the journal of each house of the General Assembly, printed as required by law. Section 3229, Virginia Code, 1904. This question not having been raised and therefore not considered by the lower court, is not in the record, and we can only consider the case, as a question of fact, upon the record certified to us from the trial court as provided by law."

In *Strawberry Hill Co.* v. *Starbuck*, 124 Va. 71, 97, S. E. 362, 367, this court incidentally referred to the debates in the Constitutional Convention (counsel in argument having cited them), but, even if the question be regarded as the same as that here involved, the point was not raised or considered, and hence the case cannot be regarded as authority on that question. The question here involved was not discussed by counsel on either side, and *Wayt* v. *Glasgow, supra,* was not cited or referred to, and we prefer not to pass on it except after full argument. But as the plaintiff in error has appealed to the Journal of the House of Delegates in support of her contention, without objection on the part of the Commonwealth, and as no question of our jurisdiction is involved, we shall assume for the purposes of this case, without passing on the question or committing the court to that view, that we may take notice of the contents of said journal, treating the conduct of the Commonwealth as a waiver of any objection to the inspection of the journal. We have less hesitation in doing this than we should otherwise have because our conclusion is the same whether we do or do not take notice of the contents of the journal.

The prohibition act of 1916 (Acts 1916, pp. 215, 246) protected the rights of innocent owners of vehicles provided they could establish their ignorance of the unlawful use to

which such vehicles were put, but the burden was placed upon them to do that. This act made no reference to chapter 98 of the Code. The so-called forfeiture section of that act . (section 57) had to be amended because it did not provide due process against the owner of the vehicle. This amendment was effected and other material changes made by section 57 of the act of 1918. Clause (c) of this section declares that "the proceedings shall conform as nearly as practicable to chapter ninety-eight of the Code of Virginia of nineteen hundred and four." Section 2183 of said Code, which is a part of chapter 98, is as follows: "Any person concerned in interest may appear and make defense to the information, which may be done by answer on oath. Ignorance of the respondent or other contestant, that the property seized was being used in violation of law, shall be no defense. Nor shall it be ground of defense that the person by whom the said property was used in violating the law has not been convicted of such violation. The said information shall be independent of any proceeding against such person or any other for violation of law." The first sentence of that section is carried into clause (c) of the act of 1918, and the last two sentences, word for word, into clause (d) of said act. A provision somewhat similar to the second sentence of section 2183 was in clause (d) when it was reported to the House of Delegates, but the following action appears from the Journal of the House of Delegates to have been taken thereon:

"Mr. Bailey moved to amend as follows: 'Section 57, strike out the following words: "and the ignorance of such person or persons in charge of or occupying such vehicle and team, automobile, boat or other conveyance that the property seized was used in violation of law, shall be no defense as to his interest therein," and insert in lieu thereof the following: "and the possession of such ardent spirits in such vehicle, automobile, boat or other conveyance shall

be *prima facie* evidence that the person in charge knew
such ardent spirits were in such vehicle, automobile, boat
or other conveyance," which was agreed to.' " It is insisted
by counsel for the plaintiff in error that this action shows
that the legislature deliberately refused to provide for a
forfeiture of the vehicle of an innocent owner, and that to
hold otherwise is to read into the statute a provision which
the legislature had deliberately refused to adopt, and that
further enquiry on the subject is unnecessary and useless.
In this view, we cannot concur. It will be observed that
the language stricken out on the motion of Mr. Bailey
makes no reference to the owner of the vehicle as such, or
to his ignorance of the use to which his vehicle was being
put. The unconditional forfeiture clause had already ex-
cluded these and the legislature was now dealing with the
person in charge of the vehicle, or occupying the same. The
language proposed is unlike the language of section 2183
of the Code (1904), which was, "Ignorance of the respond-
ent or other contestant * * * shall be no defense" to the
forfeiture of the vehicle, while here the language stricken'
out was "the ignorance of such person or persons in charge
of or occupying such vehicle * * * shall be no defense as
to his interest therein." There can be no doubt as to the
meaning of the language used in section 2183, but the lan-
guage proposed is ambiguous. It may mean that if the in-
nocent owner were present, either in charge of or occupy-
ing the vehicle, his vehicle would be forfeited although he
was in total ignorance of the fact that ardent spirits were
in the vehicle, and that if he were absent only the interest
of the "person in charge or occupying the same" would be
forfeited, or it may mean that the knowledge of the illegal
traffic on the part of "the person in charge or occupying
the same" should only result in the forfeiture of *his inter-
est therein*. It may be that the language proposed was sus-
ceptible of still other interpretations. However this may

be, it was stricken out, and other language substituted therefor as above indicated. It was a drastic measure aimed at the forfeiture of the vehicle, notwithstanding the ignorance of the owner of the illegal use to which it was being put. But the language used clearly indicates that it was not the purpose of the legislature to forfeit the vehicle if both the owner and the person in charge was wholly ignorant of the illegal transportation. For reasons of public policy, the statute establishes a rule of evidence as to the knowledge of the person in charge, but if he can overcome the *prima facie* presumption the vehicle is exempt. It will be observed that this presumption is applied only to the "person in charge" and does not apply to the mere "occuant." If the owner were entirely innocent, and the "person in charge" were wholly ignorant, it would have been not only a great hardship, but a manifest injustice to have declared the vehicle forfeited, and hence when the attention of the legislature was drawn to it by the motion of Mr. Bailey, the legislature promptly adopted the proposed amendment, the effect of which was to relieve the innocent owner, if "the person in charge" could show that he was ignorant of the fact that "such ardent spirits were in such vehicle." It is true that the burden of proof was put upon him to show his ignorance, but his possession of the ardent spirits was an illegal possession, and it was not unreasonable to require that he should show that it was an ignorant possession. The action of the legislature on the motion of Mr. Bailey was in the interest of the innocent owner and not to his prejudice, and is very far from showing that it was the purpose of the legislature to exempt the vehicles of all innocent owners. This action of the legislature confirms us in the view hereinbefore expressed as to the proper construction of the *"prima facie* evidence" clause of paragraph (d) of section 57. We have said nothing about the forfeiture of vehicles used in the illegal transportation of ardent

spirits, where the possession of the vehicle was acquired from the owner by theft or other trespass and he was innocent of any participation in the illegal use, as that question is not before us. Here the possession was lawfully acquired.

The argument in this case has taken a wide range and many cases have been cited to sustain various propositions, but the crux of the case is simply what did the legislature mean by the language it has used. Upon this question, the cases cited do not give, and could not be expected to give, any material aid. We have given to the case the earnest and careful consideration which its importance demands. We have been at pains to examine every proposition and every argument put forth by the able counsel for the owner, and, while not specifically responding to each, we think we have said enough to give clearly our views of the correct interpretation of the statute under consideration.

For the reasons we have stated, the judgment of the trial court must be affirmed.

*Affirmed.*