# CRIMINAL CASES.

## Richmond.

### BUCHHOLZ V. COMMONWEALTH.

#### March 30, 1920.

1. INTOXICATING LIQUORS—*Forfeiture of Automobile—Automobile Stolen by its Chauffeur—Case at Bar.*—The owner of an automobile, a citizen of the city of Washington, D. C., directed his chauffeur to take his car to a repair shop in the city of Washington for repairs. The chauffeur, without the owner's knowledge or consent, used the car to illegally transport liquor into Virginia. It was insisted that under the laws of the District of Columbia, the chauffeur became the thief of the car before he brought it into the State of Virginia.

   *Held:* That the chauffeur was the "person in charge" of the car under the prohibition act (Acts 1918, p. 612, sec. 57) and the car was, therefore, subject to forfeiture under that act, and that it was immaterial whether the chauffeur had custody or possession of the car. If he had either, it was with the consent of the owner, and this was sufficient to justify the forfeiture.

2. INTOXICATING LIQUORS—*Forfeiture of Automobile—Construction of Statute.*—The facility with which liquor may be transported in automobiles is very great, and it is necessary that the forfeitures provided in the prohibition act should be strictly enforced, unless it can be shown that the owner did not knowingly part with either the custody or possession thereof. This necessity is emphasized by section 58 of the act (Acts 1918, p. 612), declaring that, in order to effect its objects, "all of its provisions shall be liberally construed."

Error to a judgment of the Hustings Court of city of Richmond, on information by the Commonwealth to enforce the forfeiture of an automobile. Judgment of forfeiture. The owner of automobile assigns error.

*Affirmed.*

The opinion states the case.

*McC. G. Finnegan, Edgar B. English* and *Thos. O. Moss, Carlin & Carlin* and *Smith & Wools,* for the plaintiff in error.

*Jno. R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

This is an information to enforce a forfeiture of an automobile seized under the provisions of section 57 of .the prohibition act (Acts 1918, p. 612), while engaged in the illegal transportation of ardent spirits. There was a judgment establishing the forfeiture, and to that judgment the writ of error in this case was awarded.

By consent of parties the case was heard by the court, without the intervention of a jury, on the following agreed state of facts:

"It is agreed that the car in question, to-wit, Cadillac 7-passenger, D. C. license 10139-1918, Md. license 1918-H, engine No. 55-A-136, described in the information, was seized in the city of Richmond, Virginia, by certain police officers of said city, on December 19, 1918, while in the possession of one James A. Chisholm, and that the said car was transporting ardent spirits contrary to law, and that said car was of the value of twelve hundred and fifty dollars.

"It is further agreed that the car in question was and is now the property of the respondent, Gustav Buchholz, and that the said James A. Chisholm had no interest whatsoever in said automobile and that the said respondent was not at the time of said transportation, or at any other time,

aiding or abetting the said James A. Chisholm, or any other person, in the transportation of ardent spirits.

"It is further agreed that the respondent, Gustav Buchholz is a citizen of the city of Washington, D. C., having been a citizen of said city for the last twenty-five years; that he is the proprietor of the Hotel Occidental, in the said city of Washington, D. C., that in connection with the operation of his hotel business he owns and operates several large automobiles for sightseeing purposes, and that among these automobiles so used was the automobile in this case; that the said James A. Chisholm was employed by Gustav Buchholz as a chauffeur, his duties being to operate one of the said automobiles in the city of Washington, and in the District of Columbia, and nowhere else, carrying persons in and about said city and district for sightseeing purposes; that on December 18, 1918, the said James A. Chisholm was directed by Gustav Buchholz, his employer, to take the car in question to a certain automobile repair shop in the city of Washington, D. C., so that certain repairs could be done upon said car that were necessary, and to place the automobile in the shop for this purpose; that the next morning, December 19, 1918, that the said James A. Chisholm did not report to the hotel for duty, and upon inquiry made by Mr. Buchholz at the repair shop, he learned to his utter surprise that the car in question had not been brought there at all and that those in charge of said shop knew nothing of it; that thereupon Mr. Buchholz made inquiry in and about the city of Washington, trying to locate his said chauffeur and automobile, but in vain, and that he thereupon immediately reported the disappearance of his car to the superintendent of the Metropolitan police force of Washington, D. C., Major R. W. Pulliam, and also to the police officer on the beat wherein his hotel is located, namely, one Isadore Rosenburg, with the request that steps be taken immediately to locate the said automobile and to arrest the

said James A. Chisholm for stealing same; that on the night of said December 19, 1918, the said Gustav Buchholz was called up by long distance telephone from Richmond, Virginia, and advised that a man by the name of "James A. Chisholm" was arrested in said city with the automobile in question, which said automobile had ardent spirits, and that he, the said Chisholm, had advised that the automobile belonged to Mr. Buchholz; that Mr. Buchholz immediately went to Richmond, Virginia, saw his automobile and identified it as being his property."

[1] There is nothing in principle to distinguish this case from *Landers* v. *Commonwealth,* 126 Va. 780, 101 S. E. 778, except that it is insisted that, under the laws of the District of Columbia, Chisholm became a thief of the automobile before he ever brought the car into the State of Virginia, and hence the rights of the owner are superior to the claims of the State. The facts agreed show that the car was entrusted to Chisholm by the owner in the conduct of the latter's business. In taking charge of the car Chisholm was neither a trespasser nor a thief, and when the car was seized Chisholm was the "person in charge" thereof. There are many nice distinctions between custody and possession, applicable chiefly in the administration of the criminal law where they have been practically eliminated by the statutes on embezzlement, but we do not regard them as applicable to the statute under consideration. As pointed out in *Pennington & Ricker* v. *Commonwealth, post,* p. 803, 102 S. E. 758, decided to-day, the important inquiry is, did the owner intrust his car to Chisholm? If he did, he must bear the consequences of his misplaced confidence. It is immaterial whether Chisholm had custody or possession. If he had either, it was with the consent of the owner, and this was sufficient to justify the forfeiture. The law on this subject is well stated by Judge Woods in *United States* v. *One Saxon Automobile,* 257 Fed. 251, 168 C. C. A. 335,

cited by counsel for the plaintiff in error. He points out the reason why the property of the owner should not be subject to forfeiture when it has been taken from him in the first instance by trespass or theft, and in doing so bears in mind the fact that both custody and possession involve lawful acquisition and are to be distinguished from trespass and theft which are unlawful. In speaking of the rule of construction where the property was taken by trespass or theft, he says: "This rule of construction has been extended without dissent to protect the innocent owner of property from forfeiture, even when provided by a statute which expresses no limitation or exemption of any kind where the property *has been taken* by a trespasser or a thief, or the owner has been deprived of the possession by forces of nature beyond his control. This is for the reason that no right of possession *or custody* can be acquired by or from a trespasser or thief, or by virtue of the forces of nature against the will of the owner. In such case, the owner of the property has never in a legal sense parted with any right of *custody or possession,* and hence no statute can operate against his title by reason of the *use or custody or possession* of the thief or trespasser, or his deprivation of it by the forces of nature. This reasoning obviously does not apply when the *owner voluntarily parts with his possession and entrusts* his ship or vehicle to another, for in that case the owner is charged with knowledge that the person to whom he has relinquished possession, or some one acquiring the possession from him, may so use the property as to defeat the collection of the revenue, and thus bring it under the condemnation of forfeiture." (Italics supplied.)

[2] The facility with which liquor may be transported in automobiles is very great, and it is necessary that the forfeitures provided in the prohibition act should be strictly enforced, unless it can be shown that the owner did not knowingly part with either the custody or possession thereof.

This necessity is emphasized by section 58 of the act, declaring that, in order to effect its objects, "all of its provisions shall be liberally construed."

The case is one of great hardship, but as the custody of the machine was acquired by Chisholm with the consent of the owner, we are of opinion that the case comes within the language of the statute and that there was no error in declaring the forfeiture. The judgment of the trial court must therefore be affirmed.

*Affirmed.*