## UNITED STATES v. ONE W. W. SHAW AUTOMOBILE TAXI AND 186 QUARTS OF PENWICK WHISKY.

(District Court, N. D. Ohio, E. D.   May 20, 1921.)

No. 10603.

1. **Intoxicating liquors ⟺251—Owner of automobile used in transporting liquor must show good cause to avoid forfeiture.**

   Under Volstead Act, tit. II, § 26, authorizing condemnation of the vehicle used in illegal transportation of liquor, unless good cause to the contrary is shown, the burden is on the owner of the vehicle used by another in transportation to show good cause why the vehicle should not be forfeited.

2. **Intoxicating liquors ⟺251—Owner of seized automobile must negative authority to use for transportation and negligence.**

   An owner of an automobile, seized while illegally used for the transportation of liquor, does not show good cause why it should not be forfeited, unless he not only proves clearly and satisfactorily that it was used without his knowledge and consent, and in excess of any authority conferred by him on the person using it, but also removes any imputation of negligence by intrusting the vehicle to another under circumstances from which a reasonable person would have foreseen it was to be illegally used.

3. **Intoxicating liquors ⟺247—Taxi driver held to have knowledge that whisky was being illegally transported.**

   A taxi driver, who answered a call at a building formerly a saloon and was employed to take a passenger a distance of 150 miles, for which the charge for the round trip would be $120, and who left his taxi in the alley back of the saloon, and thereafter found that it had been moved, and several sacks placed therein, was chargeable with knowledge that the taxi was being used for the illegal transportation of liquor.

4. **Intoxicating liquors ⟺251—Taxi company held not to have shown good cause for return of seized automobile.**

   In proceeding for the condemnation of an automobile seized while being used for the illegal transportation of liquor, evidence that the taxi driver, who had authority to decide for the company whether to accept the employment or not, and to collect compensation therefor, knew that the liquor was being illegally transported, and that the officers of the owner corporation had information of facts indicating that the employment was an unusual one, *held* not to show good cause by the owner for the return of the taxi, though it had instructed its drivers not to permit liquor to be transported therein.

Libel of Information in Forfeiture.   Proceeding by the United States for the condemnation of one W. W. Shaw automobile taxi and 186 quarts of Penwick whisky.   Order of condemnation and sale of both the whisky and the automobile entered.

D. J. Needham, Asst. U. S. Atty., of Cleveland, Ohio.

Holding, Masten, Duncan & Leckie, of Cleveland, Ohio, for claimant.

⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WESTENHAVER, District Judge. This libel is filed to condemn and forfeit one W. W. Shaw automobile and 186 quarts of whisky. The automobile was seized at Youngstown, Ohio, while being used in the illegal transportation of the whisky by August L. Becker as driver, and Louis Szczygielski, as owner or custodian of the whisky. Both of them have been convicted of the offense of illegally transporting intoxicating liquor. The Pittsburgh Taxicab Company has appeared and intervenes, claiming to be the owner of the automobile, and that it was being thus illegally used without its knowledge, authority, or consent.

[1] Upon the foregoing facts, the whisky is in any event subject to condemnation and forfeiture. The automobile is also subject to condemnation and forfeiture, unless upon the facts good cause is shown under section 26, title II, Act October 28, 1919, known as the Volstead Act (41 Stat. 315), for surrendering it to the owner. This section, among other things, provides that, whenever an officer seizes intoxicating liquor being illegally transported, he shall also take possession of the vehicle used in such illegal transportation, and that, upon conviction of the person guilty of the illegal transportation, the liquor shall be destroyed, and, "unless good cause to the contrary is shown, the vehicle shall also be condemned and sold." Obviously, this puts upon the owner the burden of proof to show good cause in law why the vehicle shall not be thus condemned and forfeited.

[2] What is good cause is not defined in the act, and has not as yet been authoritatively defined by decision. It has been discussed in U. S. v. Burns (Peck, D. J.) 270 Fed. (D. C.) 681, U. S. v. Brockley (Witmer, D. J.) 266 Fed. (D. C.) 1001, and The Saxon (Smith, D. J.) 269 Fed. (D. C.) 639, in all of which the vehicle was ordered to be surrendered to the owner. Upon the facts appearing in these cases, I concur in the conclusions reached. In my opinion, however, good cause is not shown, unless the owner can prove clearly and satisfactorily that his automobile was used, not only without his knowledge and consent, but in excess of any authority, express or implied, which may have been conferred by him upon the person using it. I am further of opinion that the owner must remove any imputation that he negligently intrusted his automobile to an employé or other person under circumstances from which a careful and prudent person ought to have foreseen that it was likely to be thus illegally used. This section differs from R. S. § 3450 (U. S. Comp. St. § 6352), under which a vehicle used in furtherance of a fraud upon the revenue laws is subject to condemnation and forfeiture, despite the innocence or want of knowledge of the owner. See Grant Co. v. U. S., 254 U. S. 505, 41 Sup. Ct. 189, 65 L. Ed. ——, decided by the U. S. Supreme Court January 17, 1921. That section does not exempt the vehicle from forfeiture upon good cause shown, whereas the applicable section of the Volstead Act not only does so exempt it, but further provides that a bona fide lien on the vehicle is protected if the lienor can show that his lien was created without any notice that the vehicle was to be used for the illegal transportation of liquor. This departure from the policy of the revenue laws is evidently for the purpose only of protecting innocent and careful

owners from the hardship resulting from the unauthorized use, without their knowledge and consent, of their property. A heavy burden, however, remains upon the owner, not only of proving that his vehicle was thus used without his knowledge, authority, or consent, but of repelling any inference of negligence or collusion. · It is in the light of the evils at which the law is directed that the facts in each case must be weighed and scrutinized, in order to determine whether good cause is shown.

[3] In this case the owner, the Pittsburgh Taxicab Company, was engaged in the automobile livery business in Pittsburgh, Pa. It had an equipment of probably 100 automobiles or taxicabs. It employed from 175 to 200 drivers. August L. Becker was one of its regular drivers. On the occasion in question he was directed by a dispatcher of the taxicab company, whose business it was to answer calls and send out taxicabs, to go to 410 West Main street, West End, Pittsburgh, in response to a call. The premises at this number were used for saloon purposes. Upon arriving there he was met by the saloon keeper, probably a foreigner, and was presented to one Louis Szczygielski, who said he wanted a taxicab to take him to Cleveland, Ohio. Thereupon Becker called the company superintendent, telling him that the man wanted to go to Cleveland, and that the taxicab he then had was in no condition to be driven such a distance. The superintendent directed him to bring that car back to the company's garage and exchange it for a car suitable for the trip, which he did, obtaining the necessary supplies and a spare tire. What, if anything, he reported to the superintendent, or what inquiries, if any, the superintendent made of him are not disclosed in the evidence. Returning to 410 West Main street, he drove the taxicab in an alley in the rear of the saloon, went inside, and remained there talking with the saloon keeper until he was later informed that all was ready to proceed, and, upon going out into the street, found that his car was down at or near the street corner, some distance from where he had left it in the alley. He started on this trip, if his affidavit is to be believed, without further inquiry or without discovering that a number of sacks had been loaded into the rear part of the body of his car, and did not discover that the sacks contained whisky until later, en route, one of the bottles was broken. Undoubtedly, upon the admitted facts, he must be held to have been a full participant in the illegal transportation. It surpasses belief that he did not know the nature and purpose of the enterprise from the moment he first arrived in front of the saloon and before returning to the garage for another car.

[4] The owner's situation is somewhat different. One of its officers testifies that the hiring of taxicabs for trips to Cleveland was not unusual in its business; also that instructions had been repeatedly given to its drivers that they should not use any of its cars in the transportation of intoxicating liquors; that these instructions had not only been bulletined, but that the drivers had been called together and given explicit oral instructions. It is further testified that the instructions to the drivers were that if, upon arrival at the place of call, a passenger appeared to have intoxicating liquors to be transported, the service

should be refused. The course of business when a call came to the company office was to relay the message by telephone to the taxicab stand or station nearest to the place where the taxicab was to be sent, and that in this instance the dispatcher had relayed the message from the office to the Penn Hotel that an automobile was wanted by some one at 410 West Main street. It seems that the final duty of accepting or declining to contract for the desired service, and of collecting the charges, were entrusted to the driver. The rate of charge for this service, Becker says, was 40 cents a mile, and that he had expected to collect it at the end of the trip. In the instant case it does not appear that either the dispatcher or superintendent did anything by way of inquiry or otherwise, either before or after the call was received or Becker came in to exchange his car, to assure himself of the nature of the prospective trip to Cleveland.

Upon these facts I am of opinion that good cause is not shown to exonerate the automobile from condemnation and forfeiture. The driver in a way represented the owner at the time he devoted its car to this illegal service. It is true that his authority and powers were restricted as compared with the authority and power of a manager or superintendent, but within that limited scope he had power and authority to act for the owner, which, being a corporation, must of necessity always act by agents. He was so far within the scope of his authority that the owner during the entire period would have been liable for his negligence in operating the car and for repairs and supplies ordered during the trip. If he had negligently injured some one en route, the owner would have been liable in damages. I do not hold that an automobile livery is to be held liable in all cases, if a driver, contrary to instructions, devotes one of its cars to the illegal transportation of intoxicating liquor. It should, no doubt, depend upon the facts and circumstances of each case. In the instant case, the facts and circumstances are that the owner's dispatcher or superintendent sent its driver to premises used for saloon purposes; that he permitted the driver, after being informed that the car was destined for Cleveland, to engage in that enterprise without inquiry or investigation; that full authority was conferred on the driver to engage or refuse to engage in the enterprise, using his own judgment as to whether the transaction was legal or illegal; and that no precautions were taken at any time to ascertain whether or not the transaction was legal or illegal. The distance to be traveled each way is approximately 150 miles. The expense of a round trip, at 40 cents a mile, would be approximately $120. It is difficult to believe that this is a simple, ordinary transaction in the usual course of business. It was then a matter of public notoriety that whisky was being transported, not only in suit cases and trunks upon railway trains, but upon the public highways in automobiles and trucks. To exonerate the owner on a showing merely that instructions had been given to its drivers not to engage in the illegal transportation of intoxicating liquors, notwithstanding the drivers were intrusted with full authority to decide whether the transaction was legal or illegal, would open wide the door to collusion and evasion of the law. Upon the facts and under these circumstances, I am of

opinion that the owner has not shown good cause for the return of its car.

The usual order of condemnation and sale, both of the whisky and of the automobile, will be entered. An exception may be noted.