## PITTSBURGH TAXICAB CO. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. July 7, 1922.)

No. 3696.

**I. Intoxicating liquors ⬤⇒167—Taxicab company bound to exercise reasonable vigilance to prevent unlawful transportation.**

A taxicab company, engaged in the business of transporting passengers and baggage for hire, and holding itself out as ready to serve the public in that capacity whenever called on, must exercise reasonable vigilance to prevent use of its transportation facilities for the unlawful transportation of intoxicating liquor.

**2. Intoxicating liquors ⬤⇒250—Evidence held sufficient to show taxicab driver's actual or constructive knowledge that passenger had loaded liquor.**

Evidence that taxicab driver, called to saloon at 2 a. m. to take a passenger from Pittsburgh to Cleveland, was told to drive into the alley in the rear of the saloon, and after some delay, when passenger was ready to proceed, discovered that sacks filled with something had been placed in the taxicab, was sufficient to show that he knew or ought to have

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

known that the passenger had caused intoxicating liquor to be placed in the taxicab.

3. **Intoxicating liquors ⚖➟247—Forfeiture of taxicab warranted, on theory that company knew or had opportunity of knowing character of service it was furnishing.**

Where long-distance taxicab trips were not so numerous that it was impossible for taxicab company's managing officers to control this branch of its business, and its superintendent was informed by driver called to ᐦsaloon at 2 a. m. that passenger wanted to be driven from Pittsburgh to Cleveland, forfeiture of the taxicab for the transportation of liquor therein was warranted on the theory that the company's officers and employees, other than the driver, knew or had full opportunity to know the nature and character of service it was furnishing.

4. **Witnesses ⚖➟311—All facts and circumstances to be considered in determining credibility of evidence.**

In determining the credibility of evidence, it was the duty of the trial court to consider all the facts and circumstances admitted or proven in the case.

5. **Evidence ⚖➟568(1)—Court not bound to accept opinion of witness that trip was ordinary taxicab run.**

In proceeding to forfeit taxicab used in transporting liquor, trial court was not required to accept the opinion evidence of taxicab company's special agent that a trip from Pittsburgh to Cleveland, starting at 2 a. m., was an ordinary run.

6. **Intoxicating liquors ⚖➟250—No presumption that taxicab business in charge of person superior to superintendent of garage.**

In proceeding to forfeit taxicab used in transportation of liquor, there was no presumption that taxicab company's business at 2 a. m. was in charge of any of its officers or managing agents superior in authority to the superintendent of its garage.

Appeal from District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Proceeding by the United States against the Pittsburgh Taxicab Company to condemn and forfeit an automobile taxicab and certain intoxicating liquor. Judgment for the United States (U. S. v. One, W. W. Shaw Automobile Taxi, 272 Fed. 670), and defendant appeals. Affirmed.

Theo. C. Robinson, of Cleveland, Ohio (Holding, Masten, Duncan & Leckie, of Cleveland, Ohio, on the brief), for appellant.

D. J. Needham, Asst. U. S. Atty. of Cleveland, Ohio (E. S. Wertz, U. S. Atty., of Cleveland, Ohio, on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. On the 15th of September, 1920, the United States Attorney for the Northern District of Ohio, filed in the District Court, on behalf of the United States of America, a libel to condemn and forfeit a W. W. Shaw automobile taxicab and 186 quarts of whisky, under section 26, title 2, of the National Prohibition Act (41 Stat. 315). This taxicab was seized at Youngstown, Ohio, while being used in the illegal transportation of whisky from Pittsburgh, Pa., to Cleveland, Ohio. Both the owner of the whisky and the driver of the car were arrested and convicted of the offense of illegally transporting intoxicating liquor. The Pittsburgh Taxicab Company intervened, alleging ownership of the automobile against

⚖➟For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

which the libel had been filed; that it had no knowledge whatever that intoxicating liquor was being transported therein until after the automobile had been seized at Youngstown, Ohio, and the passenger and driver were placed under arrest; and that, if the driver or passenger violated any act of Congress or any law of the United States, such violation was entirely without its knowledge and consent.

The evidence offered on the trial tended to show that the claimant owned and operated about 100 taxicabs in and out of Pittsburgh, Pa., and employed about 175 drivers; that this call for taxicab service was given over the telephone, about 2 o'clock a. m., June 29, 1920, to its central operator, who in the usual way relayed the call to its down town dispatcher, who in turn gave the order to August Becker, one of its drivers, who at that time was the first driver in line; that when Becker reported at 410 West Main street, the number given over the telephone, he discovered it was a saloon; that he was met by a saloon-keeper, probably a foreigner, who said that he had a man inside the saloon who wanted a taxicab to drive him to Cleveland; that Becker then called the superintendent of the Pittsburgh Taxicab Company on the telephone, and told him he had a man who wanted to be driven to Cleveland, and the taxicab was in no condition to be driven such a distance. The superintendent then ordered Becker to bring the car back to the company's garage and exchange it for a car that was suitable for such a trip; that Becker did so, and then returned to No. 410 West Main street, where a man told him that the passenger would be ready in a few minutes, and ordered that the taxicab be driven into the alley in the rear of the saloon. Becker did this, and then went into the saloon and talked to the saloonkeeper. After some delay he was informed that his passenger was ready to proceed. Upon going out into the street he discovered that his car was down near the corner and that some sacks filled with something had been loaded into the taxicab. Becker, at that time, made no inquiry as to what was in the sacks, but after he was some distance out of Pittsburgh, one of the bottles was broken and he smelled the odor of whisky. He then said to his passenger, Louis Szczygielski, "You have whisky in the car," and the passenger said, "You did not see us load it," and ordered Becker to drive on. Becker made no agreement with the passenger as to rates, but intended to charge and collect 40 cents per mile, whatever the meter showed. The round trip from Pittsburgh to Cleveland is about 300 miles.

The claimant also offered as a witness in its behalf J. P. Smith, its special agent or claim adjuster, who testified that by reason of the nature of the company's business it was compelled to leave the entire responsibility to the driver as to whether or not "he will accept passengers and the luggage or anything that is to be transported, except at one of our regular stations, where there may be a dispatcher," and that all the drivers were instructed and cautioned with reference to liquor transportation that, "if they came to a destination and there were passengers to enter their cab who had with them any bundle from the general appearance of which their suspicion was aroused as to the contents being liquor, they were positively to refuse the trip." He

further testified that a written notice was posted on its bulletin board that any driver hauling or having in his cab any liquor was subject to arrest and the cab liable to confiscation. This witness was permitted to testify, without objection, that none of the officers or employés of the taxicab company, with the possible exception of the driver, Becker, knew anything of the fact that liquor was transported on this occasion. He further testified that he considered a trip from Pittsburgh to Cleveland an ordinary trip; that the company had had trips to Philadelphia, which is probably twice the distance. The claimant also filed the affidavit of its manager, L. F. Gardner, that the use of its automobile in violation of any act of Congress or any kind of law of the United States was entirely unknown to the Pittsburgh Taxicab Company.

The District Court found the allegations of the libel true and that the claimant had not shown good cause, within the meaning and intent of section 26, title 2, of the National Prohibition Act, to exempt the automobile from condemnation and forfeiture. It is not necessary to consider any matter of procedure in the court below or on appeal, because, in view of the statute providing that a review should be given upon the appropriate remedy, even if that had not been sought, the result would be the same.

It is insisted upon the part of the claimant that this judgment of the District Court is not sustained by the evidence; that the effect of his judgment is to forfeit claimant's property for the negligence or fault of its employé; that the doctrine of respondeat superior has no application to penalties or forfeitures and that the failure of section 26 of title 2 of the National Prohibition Act to designate specifically what shall constitute good cause does not confer upon the court such an absolute discretion to determine that question as will not be reviewed, except for abuse thereof.

[1] The plaintiff was engaged in the business of transporting passengers and baggage for hire. It held itself out as ready to serve the public in that capacity whenever any individual member of the public called upon it for such service. This, of course, meant legitimate service; nevertheless the nature of its business was such that it was necessarily required to exercise a reasonable vigilance to prevent the use of its transportation facilities for unlawful purposes. The evidence in this case does not tend to prove that Becker, the driver of this cab, was, without the knowledge or consent of claimant, engaging in a private enterprise for his own personal advantage or profit, or for the personal accommodation of his friends. On the contrary, it clearly appears that he was acting within the scope of his employment, for the sole use, benefit, and profit of his employer; that he made no special contract for this service, but intended and expected to charge and collect for the taxicab company the rate fixed by it of 40 cents per mile for the number of miles registered by the meter.

[2] The evidence in this case is sufficient to show that the driver, Becker, was not merely negligent in accepting this service, but, on the contrary, knew, or from the facts and circumstances proven in the case ought to have known, that Szczygielski had loaded or caused

to be loaded intoxicating liquors in the rear of the car. But, if it were conceded that he did not have this knowledge at the time he started upon the trip, yet the evidence is uncontradicted that he did discover that fact when he was but a few miles out of Pittsburgh, and that with such knowledge he continued in the unlawful enterprise.

It is wholly unnecessary, however, to the disposition of this case, to determine whether knowledge of a driver, specifically authorized by a taxicab company to determine whether it will accept or refuse to furnish transportation service, is the knowledge of the company, not on the doctrine of respondeat superior, but rather upon the principle that authority delegated to perform a personal duty or obligation resting upon the person delegating such authority makes the person to whom such authority is delegated a vice principal.

[3-5] While there is evidence in this record tending to prove that the officers and employés of this taxicab company, other than Becker, had no knowledge that intoxicating liquor was being transported in this car, yet there is also evidence tending to establish other facts and circumstances tending to prove that it knew, or at least had full and fair opportunity to know, the exact nature and character of the service it was furnishing to Szczygielski. In the determination of the credibility of claimant's evidence, it was the duty of the trial court to take into consideration all the facts and circumstances admitted or proven in this case.

Nor was the trial court required to accept the opinion evidence of the witness Smith that he considered the trip from Pittsburgh to Cleveland, at this time of night, an ordinary run for taxicab service. It is true that, in addition to stating his opinion, Smith also testified to the fact that his company had made such trips, but could give no estimate as to the number, further than it made more in the summer time than in bad weather. He also testified that it made trips to Philadelphia, which is twice the distance between Pittsburgh and Cleveland; but evidence that some such trips had been made, without more definite and specific proof as to their number or regularity and their legitimate purposes, does not necessarily establish the fact that such trips were usual and ordinary trips in the course of a city taxicab service.

The average mind, fairly familiar with human activities in business affairs or in the pursuit of pleasure, would naturally be inclined to inquire into the compelling motive that would induce a passenger, traveling alone, to hire a taxicab at 2 o'clock in the night season and pay for it such a large sum of money to transport him from Pittsburgh, Pa., to Cleveland, when it is common knowledge that he could be transported by railway in less time and for a comparatively negligible transportation cost. It would also seem that the frequency of such demands would tend to create, rather than to allay, suspicion as to the legality of the customer's purpose.

The nature of claimant's business was, no doubt, such as to require it to delegate authority to a large number of drivers to determine the transportation service that it would perform or refuse to perform in the city and the immediate vicinity thereof, but the evidence does not tend to show that the calls for such long-distance service were so

numerous that it was impracticable for the managing officers of the company to control that branch of its service, nor does any sufficient reason appear why it should not be required to do so. In this particular case the superintendent of the claimant company was fully advised of the nature and extent of the trip; that it was to be made, or at least to be commenced, in the night season. Under such circumstances claimant's failure to investigate and determine for itself the legality of the transaction seriously affects the question of its good faith and suggests the possibility that it knew or purposely avoided knowing that which it ought to have known in relation to its own business.

[6] It is claimed in the argument that the superintendent to whom Becker telephoned that his car was not in condition to make such a long trip was merely the superintendent of the company's garage; that fact, if it is a fact, does not appear from the evidence. If, however, the statement of counsel as to the limited authority of this superintendent were accepted as the fact, there is neither proof nor presumption that the company's business at this time of night was in charge of any other of its officers or managing agents superior in authority to this superintendent.

The trial court did not hold, as insisted by counsel for appellant, that want of knowledge on the part of the employer, in good faith and under proper circumstances, would not constitute good cause. On the contrary, the court cited with approval U. S. v. Burns (D. C.) 270 Fed. 681, U. S. v. Brockley (D. C.) 266 Fed. 1001, and The Saxon (D. C.) 269 Fed. 639, in all of which cases it was held that want of knowledge would constitute a good cause for the release of the vehicle in which the intoxicating liquor was transported. The trial court held, in effect, that this taxicab company, under the facts and circumstances of this particular case, by delegating to its driver full authority, acting for and on its behalf, to accept or reject this employment, could not, with knowledge of these facts and circumstances, relieve itself from all care, caution, and responsibility for the unlawful character of the business in which its property was employed for the company's gain.

For the reasons above stated, the judgment of the District Court is affirmed.