# CHARLESTON.

STATE v. BARNEY BROWN

(No. 5424)

Submitted March 2, 1926.    Decided March 9, 1926.

1. INDICTMENT AND INFORMATION—*Ordinarily, it is Sufficient to Charge Offense in Language of Statute Creating it.*

    Ordinarily, it suffices to charge an offense in the language of the statute creating it.    (p. 162.)

    (Indictments and Informations, 31 C. J. § 260.)

2. STATUTORY PROVISIONS.

    Under Chap. 19, § 14, sub-§ 1, Code, members of the department of public safety are authorized and empowered to make arrests anywhere within the confines of the state, of a person charged with a violation of any law of this state, and when a witness to the perpetration of any offense or crime, or to the violation of any law of this state, they may arrest without warrant.    (p. 163.)

    (Arrest, 5 C. J. § 23.)

3. ARREST—CRIMINAL LAW—*On Arrest by Officer in Exercise of Proper and Lawful Authority, Contraband Liquor in Possession of One Arrested May be Taken; on Lawful Arrest by Officer and Taking Possession of Contraband Liquor in Possession of Person Arrested, Testimony in Regard Thereto is Properly Admissible on Trial of Accused (Code, c. 19, § 14, subd. 1, chapter 32a, § 37).*

    Where such officer, in the exercise of proper and lawful authority, makes such arrest, contraband liquor in the possession of the person arrested may be taken, and testimony in regard thereto is properly admissible on the trial of the accused.    (p. 163.)

    (Arrest, 5 C. J. § 74. Criminal Law, 16 C. J. § 1098.)

4. CRIMINAL LAW—*Evidence of Reputation of Accused For Truth and Veracity is Inadmissible When Reputation Not Attacked by State.*

    Evidence of reputation of accused for truth and veracity is inadmissible when not attacked by the state.    (p. 164.)

    (Criminal Law, 16 C. J. § 1122 [Anno].)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Monongalia County.

Barney Brown was convicted of the possession of moonshine liquor, and he brings error.

*Affirmed.*

*R. Shirley Taylor* and *George M. Ralphsnyder,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *J. Luther Wolfe,* Assistant Attorney General for the State.

WOODS JUDGE:

The defendant was convicted in the circuit court of Monongalia county on a charge of having in his possession a certain quantity of moonshine liquor, and was adjudged to pay a fine of $100.00 and to serve sixty days in jail. From said judgment he prosecutes this writ.

On the night of November 1, 1924, C. L. Breedlove and State Trooper Gordon W. Ross, in pursuance of instructions from the New England Fuel & Transportation Company, stopped a taxi, which had left the highway and was trespassing on said company's property. In making inquiry as to the occupants and where they were going, the officers flashed a light into the rear of the car, which disclosed the defendant and a woman in the back seat. Between their feet was a jug, with a temporary paper-wrapping mostly removed, a suit case and a small valise. Upon inquiry as to the jug, the defendant, according to the officers, stated that it was "moonshine liquor", but that it wasn't his. He told them that he hired the car, drove around to Washington Street, Fairmont, picked up Mary Jones, and then drove to Spence Street, where the packages were put in. Breedlove testifies that, "He (defendant) said he was taking it to Roy Brittentine at Cox Mine." The occupants of the car were all taken to the company's office, and Sergeant Moody of the State Police was called. Defendant paid the taxi bill, putting up his watch as part payment. Sergeant Moody then brought him to Morgantown. He was placed in jail, and later released on bond.

Defendant's story relates how he was called out of a barber shop on Madison Street, Fairmont, by one Mary Jones, and

invited to accompany her in a car to her brother's at Cox Mine, Monongalia county. He agreed to go, after being advised that it would not cost him anything, returned to the shop for his top coat, and he and Mary Jones proceeded to Main Street and got into a car, from and driven by an employee of Chilson's Garage. He states that there were several bundles in the bottom of the car, but that he did not see the jug until the officer saw it and called his attention to it. He denied telling the officers that the packages were put in at Spence Street and that the jug contained "moonshine liquor". He stated that the taxi driver asked Mary Jones for $12.00 taxi fare, and was informed by her that she did not have any money; that Mr. Moody, or one of the state officers, told defendant that he had "better fork up that money"; that defendant only had $8.60 or $8.70 with him as he "wasn't expecting to pay nothing"; that he was asked by the officer what kind of a watch he had; that the officer said "it ought to be worth $12.00" and gave it over to the taxi driver. His relationship to Mary Jones sufficiently appears from his (defendant's) testimony elicited by his counsel on direct examination: "Q. Mr. Brown, tell the jury, if you weren't afraid to, why you went on that ride. How long had you been acquainted with this lady you went with? A. As near as I could say, about six months. Q. You are married? A. Yes sir. Q. Mr. Brown, have you been intimately acquainted with this young lady? A. Yes sir. Q. Have you been out on parties with her that you would not care to have your wife know about? A. Yes sir. Q. That is the reason you went on this trip? A. Yes sir."

At the trial the defendant moved to quash the indictment, which motion was overruled. The indictment set out that the defendant "did unlawfully have in his possession a certain quantity of moonshine liquor, to-wit, ............ pints." Defendant's contention is that it is void because of uncertainty; that it accused him of having "no pints"—or nothing. This position is untenable, as the crime is not for having any particular amount, but merely for having moonshine liquor in his possession. This is the offense prohibited by the statute. (Ch. 32A, § 37.) Ordinarily, it suffices to charge an offense

in the language of the statute creating it.  *State* v. *Chafin,* 78 W. Va. 140; *State* v. *Jones,* 53 W. Va. 613; *State* v. *Riffe,* 10 W. Va. 794.

The next three assignments of error have to do with the officers' right to make the arrest, the admission of their testimony before the production of a valid search warrant, and the refusal of the court to allow Breedlove to explain in what capacity he was acting on the night of November 1, 1924. According to Ross' testimony it was their duty to "stop any cars coming on the company's property." The defendant being a trespasser, they had a right to stop the car and ask their purpose, and to direct them to leave the premises of said company. The search light in the hands of the officer, at the time he accosted the occupants of the car as to their mission, shining into the car revealed the exposed jug, and the inquiry as to its contents by the officer elicited the voluntary information from the defendant that it was "moonshine liquor". In *Boyd* v. *U. S.,* 286 Fed. 930, it was held that where liquor carried in fruit jars on the rear seat of an automobile could be seen by merely looking into the car, the discovery of whiskey by this means and its seizure without warrant were authorized, and testimony in regard thereto was properly admissible on the trial of the accused. To the same effect: *People* v. *Kamhout,* 227 Mich. 172; *Bell* v. *U. S.,* 285 Fed. 145. In *Boyd* v. *U. S., supra,* the automobile was standing on the side of the road. In the instant case it was off the public highway on private property. Cornelius on Search & Seizure, § 17, states that if the occupant of a car advises the officer upon inquiry that he has intoxicating liquor, that would constitute probable cause and authorize seizure thereof in connection with the arrest of the person imparting the information. The admission of the defendant that the jug contained "moonshine liquor" was certainly sufficient authority to authorize Ross, as a State Policeman, to make the arrest. Chap. 19, § 14, sub. § 1, Code; *State* v. *Long,* 88 W. Va. 669. Since Ross had a right to make the arrest, the objection as to his testimony and that of Breedlove until a valid search warrant was produced in court was not well taken. The defendant having admitted the presence of moonshine

liquor, there was no necessity for a search warrant. During direct examination the state attempted to show in what capacity special officer Breedlove was acting, if in fact he was a special officer of the coal company, but this evidence was not admitted because of objection on behalf of defendant. The defendant on cross examination then sought to obtain the same testimony, which was likewise refused. Under the circumstances we think this evidence immaterial. The officer Ross, who was present, made the arrest. In any view of the matter, since defendant objected to Breedlove telling his authority on examination in chief, he certainly could not be prejudiced in the court's ruling on cross examination.

The fifth assignment of error is to the rejection of certain evidence offered on behalf of defendant to the effect that his reputation as to truth and veracity was good, and that witness would believe him on oath. In Underhill Crim. Ev., § 136, the rule is stated: "In a criminal prosecution, evidence of accused's general good character, where the credibility of the witness has not ben attacked, is admissible only when limited to the particular trait involved in the nature of the charge. The traits of character which may be proved must depend upon the nature of the crime alleged and the moral wrong which is involved in its commission, or which bears some analogy to the nature of the act and is indicative and uniform of defendant's conduct generally. *Evidence of reputation of accused for truth and veracity is inadmissible when not attacked by the state.*" Defendant did not elect to bring his good character in issue under the foregoing rule, as he had a right to do. He chose only to bolster his testimony by showing his reputation alone for truth and veracity. In the instant case the state introduced the evidence of the two officers making the arrest. The defendant's evidence was given by himself, Rogers Bryan, who carried the message of Mary Jones to defendant at the barber shop, and two witnesses offered to prove defendant's general reputation for truth and veracity. In effect, defendant's evidence amounted to nothing beyond a denial of the state's evidence. "Both the admissions and the confessions of the accused are admissible against him as a part of the evidence for the prose-

cution and as direct evidence of guilt, and not merely to contradict him when he testifies as a witness.'' Underhill Crim. Ev., § 380, and cases there cited. The state introduced no witnesses on rebuttal to impeach his testimony. As this Court held in *State* v. *Terrall,* 79 W. Va. 358: ''It is not proper to bolster up a witness before his credibility has been attacked.'' Hence, under all the circumstances in this case, we are of opinion that the trial court did not abuse its discretion in refusing to admit this testimony.

The court properly refused to direct a verdict for the defendant, after introduction of state's evidence. The fact that said evidence showed that defendant disclaimed ownership, and that ''the woman said she was taking it to Roy Brittentine at Cox Mine'', does not discredit the rest of state's evidence to the effect that defendant told the officers that he hired the car, picked up the packages, stated the jug contained moonshine, and that ''he (defendant) said he was taking it to Roy Brittentine at Cox Mine.'' This admission within itself imports guilt of the charge laid in the indictment. The record contains no specific denial of the defendant of this declaration. It was a proper case for the jury.

We are of opinion to affirm the judgment.

*Affirmed.*