STATE OF WEST VIRGINIA

*v.*

JOSEPH O. ROBERTS AND RUBY MCFARLAND

(No. 10388)

Submitted October 3, 1951.    Decided November 20, 1951.

RILEY, LOVINS, JUDGES, dissenting.

*J. Raymond Gordon,* for plaintiff in error.

*William C. Marland,* Attorney General, *Thaddeus D. Kauffelt,* Assistant Attorney General, for defendant in error.

GIVEN, JUDGE:

This proceeding involves the right of the State to have a certain Ford automobile forfeited under the provisions of Sections 20 and 21, Article VI, Chapter 14 of the Acts of the Legislature, 1937, Code, 60-6-20, 21, as amended, relating to forfeiture of vehicles used in illegally transporting intoxicating liquors. Ruby McFarland appeared in answer to the petition filed by the State, alleged ownership of the automobile, denied any knowledge of the illegal use thereof, and denied any consent to or connivance in any illegal use by Joseph O. Roberts, the driver of the automobile at the time of its seizure. After having heard the evidence offered by the State and the claimant, the Intermediate Court of Kanawha County found and held that the automobile was subject to forfeiture and, by order of December 30, 1950, forfeited the same to the State. The Circuit Court of Kanawha County refused a writ of error to that judgment, on March 9, 1951.

On October 2, 1950, the automobile mentioned was seized by a police officer of the City of Charleston. The officer, upon approaching a state liquor store located on West Washington Street, in the City of Charleston, recognized the automobile which was later seized parked nearby, and immediately thereafter observed Roberts, the driver of the automobile, make several trips from the liquor store to the automobile, on each occasion carrying a package and placing it in the automobile. Roberts was assisted in carrying the packages by Sherman McFarland, husband of claimant. The officer immediately approached the automobile and requested Roberts to exhibit his driver's license. Roberts had then placed himself under the steering wheel of the automobile, preparatory to driving it from its parked location. He immediately placed the car in gear and moved forward. The officer retained hold of the automobile and, after about a block and a half, succeeded in having it stopped. Roberts had no driver's license. The officer immediately placed him under arrest. Upon a search of the automobile the officer found therein intoxicating liquors in a quantity in excess

of one gallon, and seized the car. The officer, at the time, was in plain clothes, but testified that he informed Roberts, before requesting his driver's license, that he was an officer. Roberts testified that he did not hear any such statement of the officer, but admitted that when the officer told him to "back up, he wanted to search the car", he "pulled away". Evidence obtained through the search of the automobile was introduced at the hearing. Other facts will appear in the discussion of the questions involved.

The pertinent part of Section 20, mentioned above, reads: "A conveyance of any kind, either on land, water, or in the air, used for transportation of alcoholic liquors in violation of section twelve of this article, shall be deemed contraband and shall be forfeited to the State and proceeded against in the manner provided for confiscation by section twenty-one of this article." The pertinent part of Section 12, mentioned in Section 20, reads: "A person who, without authorization under this chapter, transports alcoholic liquors in quantities in excess of one gallon or in any amount for the purpose of sale or in any amount manufactured or acquired contrary to the provisions of this chapter, shall be guilty of a misdemeanor, and upon conviction shall be fined not less than one hundred nor more than five hundred dollars, or confined in jail not to exceed one year, or both such fine and imprisonment for the first offense. Upon conviction of a second or subsequent offense, he shall be guilty of a felony and confined in the penitentiary of this State for a period of not less than one nor more than three years."

The pertinent parts of Section 21, mentioned above, read: "* * * (1) When such articles, conveyances or vehicles have been seized under or without a warrant provided for in section eighteen of this article, by an officer charged with the enforcement of this chapter, the officer shall take possession of such article, conveyance or vehicle and deliver the same and the alcoholic liquors so seized to the sheriff of the county in which such seizure was made, taking his receipt therefor in duplicate. * * *

(8) If the court or judge thereof in vacation trying the issue shall find or if it be admitted that said conveyance or vehicle at the time of the seizure contained illegally acquired liquor or that alcoholic liquors were being illegally transported therein, nevertheless: (a) If it shall appear to the satisfaction of the court that such claimant is the bona fide owner and was such owner at the time of such seizure and that he was ignorant of such illegal use thereof and the illegal use was without his connivance or consent, express or implied, the court shall relieve said conveyance or vehicle from forfeiture and restore it to such claimant, and no cost shall be taxes against such claimant, * * *. (9) If, however, no valid lien or claim is established against the seized property upon the trial of the petition, or, if it shall be determined that the owner thereof was himself using the same at the time of the seizure or that such illegal use was with his knowledge or consent, express or implied, the said property shall be completely forfeited to the State and turned over to the commission in accordance with the provisions of this chapter. * * *".

Claimant contends that the seizure and search of the automobile were illegal, having been made without a search warrant, and that the trial court erred when it considered the evidence obtained through the search. The position of the State is that the officer was justified in making the arrest of the defendant and, having made the arrest, was warranted in making the search of the automobile. The State would justify the arrest upon the ground that a crime was committed by Roberts in the presence of the officer. It may be noted, however, that the material facts testified to by the officer were known to him before the search of the automobile.

It is not disputed that a crime was committed by Roberts. He admits having liquor in the automobile in excess of one gallon, and he was convicted of illegally transporting the liquor, and served a sentence imposed for the violation. But does the evidence establish that the crime was committed in the presence of the officer? The officer

testified that he drove his own automobile to a point opposite the front of the state liquor store; that he observed "Roberts carrying a bag of liquor to the car"; that a little later he observed Sherman McFarland, husband of claimant, enter "the liquor store with Roberts, and carried a bag of liquor back to the car from the liquor store"; and that "Later, I saw him (Roberts) enter the (liquor) store on three different occasions * * *. He came out with three packages which I seen through the glass window". The officer was then asked the following question, which he answered: "Q. When you saw these three packages brought out of the store you did not know what was in them at all, did you? A. Yes, sir, I did. Q. Did you know there was whiskey in that package? A. Yes, sir. Q. Was it open. A. The bag was open and I seen the whiskey placed in the bag." Later, on cross-examination, he testified that he knew five bags were placed in the automobile seized and that four of the bags contained whiskey. None of this evidence is seriously disputed. It is confirmed in part by Roberts, who testified on behalf of claimant. As indicated above, the transportation of the packages removed from the liquor store to the automobile seized was in the presence of the officer.

In view of the evidence, the trial court could have made but one finding, that the violation of illegally transporting intoxicating liquor in excess of one gallon was in the presence of the officer. In *State* v. *Mullins,* 135 W. Va. 60, 62, S. E. 2d 562, the Court held: "Appearing in a public place in an intoxicated condition constitutes a misdemeanor, for which, if committed in his presence, a duly appointed and qualified police officer of a municipality of this State, acting as such, may arrest an offender without a warrant." In *State* v. *Koil,* 103 W. Va. 19, 136 S. E. 510, Point 2, syllabus, the Court held: "A crime is committed in the presence of an officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to believe or reasonable grounds to suspect that such is the case.

A case in which the evidence is insufficient to show the commission of an offense by the defendant in the presence of an officer." In *State* v. *Lutz,* 85 W. Va. 330, 101 S. E. 434, Point 9, syllabus, the Court held: "An offense can be said to be committed in the presence of an officer only when he sees it with his own eyes, or sees one or more of a series of acts constituting offense, and is aided by his other senses or by information as to the others, when it may be said the offense was committed in his presence."

In the instant case the officer observed the several packages being removed to the automobile seized, from the liquor store, a store selling no merchandise except intoxicating liquors. He recognized the articles placed in the packages as being intoxicating liquors. From common knowledge he would know, from the size of the articles placed in the packages, or from the size of the packages, that the contents would probably exceed one gallon. He knew that the quantity of liquor which could be legally purchased at one time could not exceed one gallon, and that the several trips to the store were probably for the purpose of removing from the store to the car liquor in excess of that amount. He observed the driver of the car place himself under the steering wheel, with other passengers seated in the car, preparatory to driving it, and had hold of the car while it was driven one and one-half blocks. In these circumstances the violation was clearly in the presence of the officer. This being true, the officer was justified in searching the automobile then under the control of Roberts and being illegally used. See *State* v. *Rudy,* 98 W. Va. 444, 127 S. E. 190; *State* v. *Brown,* 101 W. Va. 160, 132 S. E. 366; *State* v. *Vandetta,* 108 W. Va. 277, 150 S. E. 736. In view of the conclusions reached, we deem it unnecessary to discuss the right of the officer to have arrested Roberts for the alleged assault upon the officer, in driving the car forward while the officer had hold of it, or the failure of Roberts to have in his possession a driver's license.

The other contention of claimant is that the evidence is

insufficient to warrant the trial court in forfeiting the automobile seized, since the ownership of claimant to the Ford automobile is not contested. The inquiry is confined to the question whether it was made to "appear to the satisfaction of the court that such claimant * * * was ignorant of such illegal use thereof and the illegal use was without his connivance or consent, express or implied * * *." The State contends that this provision of the statute places the burden upon the claimant to prove that such illegal use of the vehicle was not with his connivance or consent. Consideration of the question involved requires a detailed statement of the evidence as it relates to the knowledge, consent or connivance on the part of claimant in the illegal use of the automobile by Roberts.

It may be recalled that Sherman McFarland, husband of claimant, was present with Roberts at the time of the arrest, and assisted in removing the liquor from the liquor store to the automobile seized. He accompanied Roberts on the trip from his home to Charleston. The home of McFarland was near the home of Roberts, and the sister of claimant was married to the father of Roberts. Claimant had, on previous occasions, loaned the automobile seized to Roberts. She testified that on the morning of the day of the seizure she loaned the automobile to Roberts, at his request, and when asked, "What did he want of it?", she answered: "He just asked me to lend him the car." Roberts testified, however, that he told her he wanted the car to look for work, but admitted that he did not look for work. Claimant testified that she paid four hundred dollars cash on the purchase price of the automobile seized and traded in part payment therefore a Mercury automobile. The Mercury was owned by her husband and had previously been involved in an accident while being driven by one Thaxton. Thaxton was convicted of driving while under the influence of intoxicating liquor, at the time of the accident. The husband of claimant was convicted of permitting another to drive the car while intoxicated; his driver's license had been revoked, and had not been reinstated when claimant loaned Rob-

erts the car on October 2, 1950. At the time of the hearing in the instant matter Roberts was under sentence to the penitentiary for a violation, the nature of which is not disclosed. It was also shown that the reputation of the husband of claimant in the community wherein he lived was that of a "bootlegger". Claimant probably had knowledge of that reputation, and she knew that her husband was accompanying Roberts on the trip to Charleston in the automobile. Claimant admits that she can not operate an automobile, and that she had been granted no license or permit to operate an automobile. When first asked how title to the car seized was first issued, she testified that it was never issued to her husband, but, upon further questioning, she was asked: "Is it not a fact that the first title to that car was made out to Sherman McFarland on the 4th of January?". She answered: "That is right, and he made it over to me." It further appears that the transfer from the husband to claimant was two or three days after the issuance of the title certificate to the husband. When asked, "Why did you put the car in your name?", claimant answered: "I don't know that." She was also asked whether the automobile seized was a gift to her, and answered: "I don't know whether it was a gift or not."

Claimant, testifying on her own behalf, stated that the automobile seized belonged to her; that there was no lien against the same; that she had no knowledge that Roberts had ever used the automobile for any illegal purpose; and that she had no knowledge that Roberts had any intention of so using it at the time she loaned it to him on the day of the seizure. Roberts testified to the effect that at the time he borrowed the automobile on October 2, 1950, he represented to claimant that he wanted the automobile for the purpose of looking for work; that he did not inform claimant that he intended to use the automobile for the purpose of transporting intoxicating liquors; and that if he had so informed her of the intended use, she would not have loaned the automobile to him.

In *State* v. *Hall and The White Co.*, 91 W. Va. 648, 114 S. E. 250, the Court had before it for consideration provisions of Section 14 of Chapter 108 of the Acts of 1919, very similar to the provisions of the present statute, as it relates to relief from forfeiture of a vehicle used in illegally transporting intoxicating liquor. There a truck was leased to Hall by The White Company and, before the expiration of the lease, the truck was seized while being used for illegally transporting intoxicating liquor. The lease provided for immediate maturity of deferred installments of rent in the event of any unlawful use of the truck. There was no other evidence indicating any knowledge or consent on the part of The White Company that Hall intended to use the truck for any illegal purpose. The Court held, Point 1, syllabus, in part, that the provision was "* * * not alone evidence of knowledge or ground of belief on the part of the lessor, of intent on the part of the lessee, to devote the property to such use; its manifest purpose being provision against a mere possible contingency, not something foreseen, suspected or feared as an impending actuality." The car was relieved from forfeiture, notwithstanding, as in the instant case, it was seized while being used in illegally transporting intoxicating liquor.

In *Jones* v. *Commonwealth*, 141 Va. 459, 126 S. E. 238, the Court dealt with a statute to the same general effect as the statute applicable in the instant case. The seizure of an automobile was involved, and there was an illegal transportation of liquor, as in the instant case. The owner testified, however, that he had no knowledge that the illegally purchased liquor was brought into the automobile by a guest passenger. The Court relieved the automobile from forfeiture, stating: "We deem it sufficient here to say that it appears to us from the evidence that the owner of the automobile has fully sustained the aforesaid burden of proof imposed upon him by the statute; that the evidence in his behalf is consistent in every particular with itself and with all the facts and circumstances tended to be shown by the evidence for the commonwealth; that such evidence is convincing in its

character and seems to us to make out a clear case for relief from the forfeiture under the statute; so that we are satisfied from the evidence that injustice has been done by the forfeiture of the automobile * * *. If there had been any conflict or inconsistency anywhere in the testimony, by which the truth of the testimony in behalf of the owner was drawn in question, we would feel that we could not interfere with the decision of the trial court, since that court heard the witnesses testify and had the opportunity to observe their demeanor, respectively, and was thus in a better position than we could be to deduce the truth from conflicting testimony. But we find no conflict or inconsistency in the testimony which presents any question of credibility or noncredibility of the witnesses."

In *Mason* v. *Commonwealth*, 137 Va. 819, 120 S. E. 133, Point 1 of the headnotes reads: "Under Prohibition Act 1918, §57, as amended by Acts 1920, c. 307, §1, adding to the provision for forfeiture of a vehicle used in violation of such law, a proviso that, when it shall be made to appear 'to the satisfaction of the court' that the owner or lienor was ignorant of its illegal use, and that it was without his connivance or consent, the court 'shall have the right' to relieve him from the forfeiture, relief from forfeiture rests largely in the discretion of the trial court, to be granted only on reasonably satisfying such court." The amendment mentioned reads: "* * * And provided, further, that whenever it shall appear to the satisfaction of the court from the evidence that the owner or lienor of such vehicle and team, automobile, boat or other conveyance was ignorant of the illegal use to which the same was put and that such illegal use was without his connivance or consent, expressed or implied, such court shall have the right to relieve such owner or lienor from the forfeiture herein provided." The Court approved a memorandum opinion of the trial court, except substituting the word "reasonably" for the word "completely", which reads: "The severity of this provision is modified, however, by a later one, towards the end of the section, by which it is provided that whenever it shall appear *to the*

*satisfaction of the court* that the owner or hirer was ignorant of the illegal use, and that the illegal use was without his connivance or consent, the court *shall have the right* to relieve from the forfeiture. This plainly puts upon the claimant the burden of completely satisfying the mind of the court of the good faith of his claim and his innocence of any connivance. The car is forfeited by the earlier provision in the statute, but a discretion is given to the court to relieve an innocent person from the forfeiture upon his innocence being shown to the satisfaction of the court. The relief against the forfeiture is a matter of sound discretion rather than of strict right, and is to be extended only in a clear case where the mind of the court is actually satisfied, not in a doubtful case or upon unconvincing evidence. * * *". See *Patterson* v. *Commonwealth,* 187 Va. 913, 48 S. E. 2d 357; *In re Denemark,* 195 N. Y. S. 232; *State* v. *One Lexington Automobile,* 203 Ala. 506, 84 So. 297; *Board* v. *Peoples National Bank,* 79 Okla. 312, 193 P. 622; *United States* v. *One W. W. Shaw Automobile,* 272 Fed. 491; *United States* v. *Brockley,* 266 Fed. 1001; *Pittsburgh Taxicab Company* v. *United States of America,* 281 Fed. 669 (6 C.C.A.), 24 A. L. R. 1125.

There appears no question that a State may enact legislation authorizing the forfeiture of property, used with permission of the owner, in the event of its unlawful use, without any showing that the owner had any knowledge of such unlawful use. *Landers* v. *Commonwealth,* 126 Va. 780, 101 S. E. 778; *Pennington* v. *Commonwealth,* 127 Va. 803, 102 S. E. 758. Under our statute, however, where a claimant appears and files a claim of ownership to the vehicle, in the manner authorized by statute, and establishes his claim "to the satisfaction of the court", the court may "relieve said conveyance or vehicle from forfeiture and return it to said claimant." Undoubtedly the trial court has a wide discretion as to the matter, and its action can not be disturbed upon review unless it is plainly wrong. The evidence necessary to satisfy the court of consent or connivance on the part of the claimant

need not be full or preponderant. If the evidence offered is doubtful or unconvincing it may be disregarded. If it is unworthy of belief it ought to be disregarded. If the trial court is reasonably satisfied, by inferences drawn from the evidence offered and the circumstances of the case, that the claimant consented to or connived in the illegal use of the vehicle, it should be forfeited. As above pointed out, the forfeiture is based upon the illegal use, and the owner may not complain if the State, by its Legislature, has authorized the forfeiture of the vehicle because of such illegal use, even though he did not consent to or connive in the illegal use. Under the present statute, however, the State, as a matter of grace, relieves the vehicle from forfeiture, notwithstanding its illegal use, in cases where the claimant appears and shows unto the satisfaction of the court that he did not consent to or connive in the illegal use.

In the instant case, we are of the opinion that the finding of the trial court, to the effect that the claimant consented to or connived in the illegal use of the automobile seized, is entirely justified. The evidence given by claimant was subject to doubt and suspicion, in part, at least. Her effort to mislead the court as to how the title to the car was first issued, and the apparent conflict between her statement and the statement of Roberts as to the purpose for which the car was obtained on the morning of the seizure, could not have been overlooked by the trial court and would justify that court in disregarding her statements entirely. Especially is that true in view of the manner in which she acquired title to the Ford automobile and the fact that she would not say whether the transfer of the title to her from her husband was a gift. The testimony of Roberts, involved as he was in the unlawful use of the car, would lend little, if any, support to the contention of claimant, especially in view of his relationship to her and his associations with her husband. To say the least, the evidence was not convincing, and the trial court was not required to hold that the claimant had satisfactorily shown her lack of knowledge of the in-

tended use of the automobile, or that she had not consented to or connived in its illegal use. The burden was on the claimant to satisfy the court of these facts. We can not say that its findings in that respect are plainly wrong.

Being of the views indicated, the judgment of the Intermediate Court of Kanawha County, and the judgment of the Circuit Court of Kanawha County are affirmed.

*Affirmed.*

LOVINS, JUDGE, dissenting:

I respectfully dissent from the affirmance of this case.

I think the syllabus points state sound principles of law, but I do not agree with the application of the law to the facts of this case.

The law relative to forfeitures of property used in the transportation of intoxicating liquor has received considerable attention from the courts in recent times. Annotations concerning property used in violation of liquor laws will be found in 47 A.L.R. 1055. As applied to state statutes, the particular part of the annotation will be found on page 1063, id. Annotations relative to cognate questions presented in this case will be found in 61 A.L.R. 551, 556; 73 A.L.R. 1087, 1097; 82 A.L.R. 607, 612; 124 A.L.R. 288, 308. An examination of the authorities cited and discussed in the annotations above mentioned clearly indicates that the statutes similar to the one here considered are constitutional.

Statutes of this kind fall into two general classifications: (a) statutes which forfeit the property regardless of the innocence of the claimant to the property, and (b) statutes similar to the one here considered which permits the owner of the property allegedly subject to forfeiture to show that he was ignorant of the illegal use of his property by the person who committed the offense.

It has been uniformly held that in cases arising under statutes in class (b), above mentioned, the burden of

proving ignorance, lack of connivance, and innocence of wrongdoing is upon the claimant of the property.

These statutes seem to stem from two principles of the common law, viz: that involving the class of deodands where there is no actual criminal act. I Chitty's Blackstone, page 223, et seq. (Book 1, pages 299, 300, 301), where the learned commentator discusses the reasons for the principle applicable to deodands and impliedly condemns it; and that relating to the forfeiture of the property of the person actually committing a crime. II Chitty's Blackstone, page 307, et seq. (Book IV, pages 377, 381). The statute here considered, by somewhat strained construction, places the claimant and owner of the property, who intervenes or answers the petition of the state, in the position of a plaintiff and places the burden on him to prove to the satisfaction of the trial court that he was ignorant of the intended violation of the law and therefore entitled to the return of the forfeited property.

The unusual case of *Van Oster* v. *Kansas*, 272 U. S. 465, 47 S. Ct. 133, 71 L. ed. 354, shows an extreme application of a similar statute. In the *Van Oster* case the power of a state to forfeit property used in violation of the prohibition laws was held to extend to an innocent owner who had entrusted its possession and use to the wrongdoer, although the person committing the crime had been acquitted of the alleged crime on which the forfeiture was based.

On the principles of common justice, this seems to be an erroneous doctrine. In a prior opinion of the Supreme Court of the United States in *Goldsmith, Jr.-Grant Co.* v. *United States,* 254 U. S. 505, 41 S. Ct. 189, 65 L. ed. 376, will be found what amounts to a tacit apology for the doctrine later applied in the *Van Oster* case. A trenchant criticism of the *Van Oster* case will be found in the opinion in the case of *General Motors Acceptance Corp.* v. *State* (Tex. Com. App.), 12 S. W. 2d 968.

The opinion of the court in the instant case relies upon the case of *Jones* v. *Commonwealth* (Va.), 126 S. E. 238.

It was held in the *Jones* case that the burden was upon the owner, under the applicable provisions of the Code of Virginia, to show that he was ignorant of the illegal use of the vehicle "and that it was without his connivance or consent." It also appears from the opinion in the *Jones* case that the owner was held to have sustained the burden of proving his innocence and lack of connivance and consent, and therefore was entitled to a release of his property from forfeiture.

In the instant case, having regard to the weakness of the evidence on behalf of the state to justify a forfeiture, I do not think that the state's proof did any more than raise a suspicion that Ruby McFarland knew or should have know about the illegal use of her automobile. I agree that, in view of the authorities mentioned above, the burden was upon her, and I think she met that requirement.

I do not think, however, that the term "to the satisfaction of the court", appearing in the statute, imports such heavy burden as is placed upon the claimant of the property in this case. I think that Ruby McFarland was entitled to have her automobile discharged from forfeiture.

Of course, the statutes vest in the trial courts wide discretion, but that discretion is subject to review and should be exercised with care and caution. To simply take by forfeiture the property of a person who is not guilty of any fault or crime is certainly a dangerous prerogative to be vested in a sovereignty which presumably guarantees the peaceful possession and lawful protection of private property.

I would reverse the judgment of the trial court.

I am authorized to say that Judge Riley joins in this dissent.