A97A1970. HANRAHAN v. CITY OF ATLANTA.
(495 SE2d 324)

BLACKBURN, Judge.

William Hanrahan was terminated from his employment with the City of Atlanta Police Department for violating three departmental work rules. He appealed his dismissal to the Civil Service Board of the City of Atlanta which affirmed the decision to terminate, although it found that Hanrahan had not violated one of the three rules. On writ of certiorari, the Superior Court of Fulton County affirmed the decision of the Civil Service Board. Hanrahan appeals this ruling, contending that the City of Atlanta failed to follow certain regulations applicable to dismissal of officers and that there was not substantial evidence supporting his dismissal. We affirm Hanrahan's dismissal for the reasons discussed below.

"The appropriate standard of review to be applied to issues of fact on writ of certiorari to the superior court is whether the decision below was supported by any evidence. On appeal to this Court, our duty is not to review whether the record supports the superior court's decision but whether the record supports the initial decision of the local governing body or administrative agency." (Punctuation omitted.) *City of Atlanta Govt. v. Smith*, 228 Ga. App. 864, 865 (1) (493

SE2d 51) (1997).

In 1991, while employed as an Atlanta police officer, Hanrahan responded to a newspaper advertisement placed by a business known as The Training Center (the Center) located in Washington, Missouri. At the time that he accepted an offer to work at the Center, Hanrahan believed that his duties would be to coordinate training activities, assist with the production of videos for law enforcement training, and perform other miscellaneous tasks for the Center's benefit. According to the owner of the Center, Chip Weichelt, it was a place where individuals could pay a price to be trained to deal with stressful scenarios such as being kidnapped, held hostage, imprisoned, and interrogated. These sessions took place in Weichelt's Missouri home where he had constructed simulated jail cells, and Weichelt videotaped the sessions in order to protect himself, the instructors, and the Center from liability claims. These surveillance tapes were not intended to be released to the general public.

During these "training" sessions, which were neither scripted nor rehearsed, clients of the Center would be placed under various amounts of mental and physical stress. In some of the videotapes, the existence of which was unknown to the police department until late 1994,[1] Hanrahan, who was not wearing his Atlanta uniform, could be seen holding a client upside down with his head in a urinal, shocking a client with a stun gun, and physically and verbally abusing clients. In one scenario, Hanrahan stated, "It's been a while since I whipped two boys' ass. Usually, a boy is black, though. I ain't whipped two white boys, maybe a couple of niggers out there now and then." The clients undergoing this "physical stress" could be heard moaning and groaning with pain.

According to Hanrahan, he became concerned after the second time he participated in such sessions that the clients were not legitimately there to learn survival skills, but instead were there for "personal gratification." On the third time that Hanrahan went to the Center, he encountered another client whom he considered to have questionable motives and terminated his employment.

1. In his first enumeration of error, Hanrahan contends that his dismissal should be reversed because the chief of police failed to follow the rules and regulations contained within the Labor Management Relations Ordinance (the Ordinance) and the Atlanta Police Department's Disciplinary Manual. As a result, Hanrahan argues that he was deprived of due process and a right to a hearing.

---

[1] The surveillance tapes were originally discovered by the Fulton County District Attorney's Office in an investigation of a robbery ring involving several Atlanta police officers. One of these officers had worked at the Center and had retained some of the surveillance tapes.

Specifically, Hanrahan argues that the chief of police failed to apply the city's progressive discipline policy. Section 114-526 of the Ordinance states, "It is the policy of the city to impose, where reasonable, progressive discipline according to procedures that are fair, prompt and appropriate to the situation. However, when an infraction is such as to impair or destroy the future effective performance of the employee or when the employee's presence impairs the effectiveness of others or presents danger to the employee, others or city property, action shall be taken to immediately remove the employee from the work environment." On its face, this policy statement allows for the immediate dismissal of an employee when his presence impairs the effectiveness of others. As the chief of police testified that part of her reasoning behind the dismissal was the effect of Hanrahan's actions on the public standing of the Atlanta Police Department, Hanrahan's immediate "removal from the work environment" did not violate the Ordinance.

Hanrahan further contends that his immediate dismissal was in contravention of the department's disciplinary manual because the chief of police failed to consider certain mitigating factors prior to his dismissal, including Hanrahan's intent or his past job performance. Hanrahan also claims that the chief of police violated the provisions of the disciplinary manual because she dismissed him before his file was reviewed by his direct line supervisor, his unit commander, and his section commander.

The disciplinary manual is merely a managerial guide used internally by the Atlanta Police Department, and it is not binding on the city. Moreover, § 2.1 of the disciplinary manual states, "The Chief of Police is responsible for the effective and professional administration of the disciplinary process. Therefore, the Chief retains the authority to review, revoke, or modify any disciplinary actions taken by any supervisor in the Department." Thus, regardless of what discipline Hanrahan's other superiors may have recommended, the final decision belonged to the chief of police. Furthermore, the chief of police testified that she reviewed Hanrahan's disciplinary history prior to the completion of his investigation.

In addition, prior to his dismissal, Hanrahan was given a hearing before the chief of police in which he had the opportunity to respond to the charges against him and provide any evidence which he wished the chief of police to consider. Hanrahan also raised the evidence which he complains the chief of police should have considered before the Civil Service Board. In light of these facts, Hanrahan's termination was not in violation of his due process rights.

2. In his second enumeration of error, Hanrahan argues that the decision of the Civil Service Board to affirm his dismissal was not supported by substantial evidence. To the contrary, the Civil Service

Board's decision that Hanrahan's behavior comprised unsuitable conduct for a police officer is well supported and clearly satisfied the any evidence test which is applicable here. *Smith,* supra. In addition to reviewing videotapes of the training sessions, the Civil Service Board heard testimony from the chief of police that Hanrahan's conduct was inappropriate for a police officer. There is no dispute that Hanrahan shocked others with a stun gun, hit their feet with a slap-jack, flushed their heads in urinals, and used racial slurs. The Civil Service Board reviewed the videotapes and concluded, "[Hanrahan] was a sworn Atlanta Police Officer. The Rules and Procedures of the department, as well as the expectations of the Police Chief, leave no room for conduct (improper) or activities (inappropriate) as evidenced in this case and as vividly portrayed in the videotapes." This conclusion is neither arbitrary nor capricious, and it is amply supported by the evidence. Accordingly, we affirm the decision of the Civil Service Board.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED DECEMBER 22, 1997.

*McKenney & Froelich, William J. McKenney,* for appellant.
*Clifford E. Hardwick IV, Rosalind A. Rubens, Rolesia B. Dancy,* for appellee.