## UNITED STATES v. KANE (SILVER BOW MOTOR CAR CO., Intervener).

### (District Court, D. Montana. May 31, 1921.)

### No. 3639.

1. **Intoxicating liquors ☞255—Relieving vehicle, used in illegal transportation, from forfeiture, is discretionary with court; "good cause."**

Under National Prohibition Act, tit. 2, § 26, providing that, on conviction of a defendant of illegal transportation of liquor the court shall order the sale of the vehicle used. and seized, "unless good cause to the contrary is shown by the owner." what constitutes "good cause" rests in the discretion of the court, which should be reasonably convinced, from

the facts and circumstances shown, that justice will be better served by a refusal to enforce the forfeiture.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Good Cause.]

2. **Intoxicating liquors ☞255—Good cause not shown for refusing to forfeit automobile used in illegal transportation.**

Intervener contracted to sell an automobile to defendant and others, to be paid for in monthly installments, retaining title and the right to retake possession on any default. Defendant was arrested for illegal transportation of liquor in the car, which was seized, but returned to him on giving bond. Eight months afterwards he pleaded guilty and was fined, and surrendered the car, which was ordered sold. In the meantime intervener, though it knew the facts, and though payments were in default, took no steps to retake possession of the car, and its president testified that, while he did not know of defendant's intention to use it in violation of law, he probably would have sold it if he had known, relying on the insurance. *Held*, that "good cause" for relieving the car from forfeiture was not shown.

Criminal prosecution by the United States against Jack Kane. On petition of intervention of the Silver Bow Motor Car Company, claimant of automobile. Petition denied.

George F. Shelton, U. S. Dist. Atty., of Butte, Mont.

William N. Waugh, of Butte, Mont., for intervener.

BOURQUIN, District Judge. Intervener seeks to show good cause why an auto used by defendant to transport whisky in violation of National Prohibition Act Oct. 28, 1919, c. 85, 41 Stat. 305, should not be sold. Defendant was arrested and the car seized on August 9, 1920, in Granite county. He pleaded not guilty on August 25, changing to guilty on April 11, 1921.

Upon inquiry by the court, he asserted unincumbered ownership of the car, whereupon he was fined only $25, and the usual order of condemnation, forfeiture, and sale of the car was then made. Intervener applied for leave to show good cause why the order of sale should not be executed, on April 25, alleging it owned the car, having sold it to defendant and two others upon condition subsequently broken by them; that it had no knowledge or notice that the car would be illegally used as aforesaid, though it was so used, as it "is now informed and verily believes." Its counsel was defendant's counsel, though he was absent when defendant pleaded guilty, two days previously having advised the court he would be absent and that defendant would so plead.

Leave granted and hearing had, intervener's president, Goodenberger, testified that intervener sold the car to defendant and two others, on July 17, 1920, for $1,360—payments, $300 cash, $100 August 13, and $100 monthly thereafter, of which only the cash and second payments had been made; that intervener knew of the offense and seizure of the car about the time of occurrence. The bill of sale introduced discloses all parties of Butte, where sale made; that the vendor retained title until all payments made, and option to resume possession

on default, payments made to be forfeited; that the car would not be removed from three named counties, Granite county not one of them, and like option of repossession and forfeiture for any breach; and that vendees would insure the car against fire, loss payable to vendor as its interest appears. Intervener then rested.

Upon cross-examination witness stated he did not know defendant's covendees, and they did not advise him of their contemplated use of the car; that "we do not have to inquire into that," nor "into their financial or other repute"; that vendees secured insurance, and delivered the policy to witness, which he then produced. It is also dated July 17, 1920, and runs to vendees as the insured, describing vendees, naming defendant first, of vocations "soft drinks, miner, and farmer, respectively." Amongst other things, it insures vendor against conversion of the car by the vendees and against confiscation of it for violation of the National Prohibition Act, and it stipulates that intervener will immediately repossess itself of the car, if located after conversion, promptly notify the insurer of any vendees' defaults which might result in confiscation, render certain assistance to insurer, if the car is confiscated, and the like.

Further cross-examined, witness testified that without such insurance "we couldn't do business"; that "we have to be protected" by insurance; that, even if they "had a hunch" vendees were about to take the car out of the state, "we wouldn't worry, as the insurance would protect us." On redirect he stated:

"We wouldn't know the buyers were going to violate the Volstead Law. The chances are that, if we did know it, we would sell them the car anyhow, as we would be protected by the insurance."

And to the last and leading question, viz., "Did you or the company know the vendees were going to violate the law by transporting liquor?" he answered, "No." It appears that, upon seizure, the car was brought to Butte, redelivered to defendant upon his bond as owner, and redelivered to the marshal after order of sale made.

[1] The seizure and order of sale were made pursuant to section 26, tit. 2, of the National Prohibition Act, which provides that, upon conviction of the offender, the court shall order a sale of the car used, "unless good cause to the contrary is shown by the owner," and that, if the car is sold, all liens "which are established * * * as being bona fide and as having been created without the lienor having any notice that the * * * vehicle was being used or was to be used for illegal transportation of liquor" shall be paid so far as net proceeds permit. This section is by no means clear but, although it is penal and not for revenue, it seems to attach guilt to the vehicle by reason of the illegal use, regardless of guilt or innocence of the owner. This is apparent from the provision that, if no claimant to the vehicle is found, it is in effect condemned and forfeited, and is sold by the officer who made the seizure—presumably, the proceeds, as in any sale, the property of the United States.

And it is further indicated by the fact that the owner's mere freedom from complicity in the offense will not relieve the vehicle from

forfeiture. Even a lienor secures no relief merely because not involved in the offense, but only when he had no knowledge, when the lien was created, that the offense was contemplated; and an owner, with more control, can justly be held to greater accountability. For the owner to secure relief requires that he shall show good cause, analogous to procurement of remission by the Secretary of the Treasury of forfeitures in cases of revenue. "Good cause" is a term that cannot be reduced to legal certainty, and vests discretion in the court when it has statutory authority to do a thing on good cause shown. See Kerchner v. Singletary, 15 S. C. 535; Kendall v. Brilly, 86 N. C. 56; People v. Sessions, 62 How. Pr. (N. Y.) 415. What is good cause, to relieve the owner from forfeiture of the vehicle, depends upon the circumstances, including the owner's conduct before, during, and in respect to the case. See Harnett v. Vise, 5 Ex. D. 307.

If the circumstances do not reasonably inspire belief that justice will be better served by refusal to impose or enforce the statutory order of forfeiture and sale, prima facie due or made, good cause has not been shown. See Jones v. Curling, 13 Q. B. D. 272; Huxley v. Company, 14 App. Cas. 26; Whitcher v. Benton, 50 N. H. 25. Each case will depend upon its own facts and circumstances, and no more definite rule can be declared in advance. The burden of proof to relieve from forfeiture is upon those seeking relief. The statute is definite in respect to what shall be proven by a lienor; indefinite in respect to an owner. This difference in statutory phraseology, and the greater accountability of an owner, indicates that the "good cause" that must be proven by an owner is something other and more than the lack of notice at a particular time that must be proven by a lienor.

An owner may assert that he is free from complicity in the illegal use, and had no notice such use was contemplated, and yet, by reason of neglect, indifference, consent, or acquiesence manifested in advance, or condonation or ratification afterward, or other fault or inequitable conduct, he may fail to show good cause against forfeiture and sale.

[2] In the case at bar, intervener sold the car to a stranger association, one of whom was of a vocation notoriously often a cloak for illicit liquor traffic. It made no inquiries into the vendees' purpose or repute, and does not disclose whether they were bad or known to it. Its attitude is it was not interested, nor obliged to inquire. It was indifferent to illegal use of the car and to its conversion or confiscation (which, for all that appears, it may have manifested to vendees), for it was insured against loss. Indeed, it blandly declared that, had it known illegal use was contemplated, the "chances are" it would have made the sale, being insured.

It contemporaneously learns of the conversion and seizure of the car, and no doubt of the car's redelivery to the defendant; but it does not invoke forfeiture and retake possession of the car, as it had engaged to do. It accepts one deferred payment about the time of or subsequent to seizure, invokes no forfeiture for default in all others, and did not seek to collect the latter, so far as appears. It did not make known its ownership to plaintiff until more than eight months after

seizure, and after defendant by misrepresentations of ownership had escaped with a small fine. All these facts and circumstances, however it might be were they not thus in combination, suffice to the conclusion that good cause against sale of the car has not been shown by intervener, the owner.

Its conduct throughout manifests a degree of indifference, if not of consent, that its property be devoted to illegal uses, that is reprehensible, at least. It may have disclosed its attitude to the vendees then, as it has to the public now. Why not? Business would be stimulated, and the car confiscated; deferred payments would be made by a responsible insurer, avoiding hazard of loss by the default of a stranger association of unknown repute and responsibility. Failure to resume possession of the car for defendant's conversion, offense, and defaults, failure to collect deferred payments, failure to disclose its ownership as aforesaid, all unexplained, and the disingenuity of its petition, which implies but recent knowledge of the offense, savor of condonation and ratification of defendant's offense, of collusion and strategy in his interest and to plaintiff's prejudice, and constitute inequitable conduct. To remit forfeiture of the car seems less consistent with justice than does to enforce it.

Judgment accordingly.