## UNITED STATES v. HUMBERD.

District Court, D. Kansas, First Division. January 28, 1929.

No. 5318.

Leo Erskine Wyman, Asst. U. S. Atty., of Topeka, Kan.

Gamble, Browne & Allen, of Kansas City, Mo., for intervener.

McDERMOTT, District Judge. The intervener is a company engaged in buying paper from automobile dealers. The facts are that the automobile dealer, the Kritzler Motor Company, sold a Reo car to one Humberd, a bootlegger of parts, and offered the paper to the intervener, who declined to buy it because of Humberd's reputation. Being advised of that fact, and reluctant to lose the sale, the dealer, through a salesman, sold the car again to Humberd, but had the papers made out in the name of one Smith, a brother-in-law of Humberd. Smith did not enjoy the reputation of Humberd; the intervener had no knowledge that the Smith paper was a blind for the Humberd sale, and bought the paper.

Smith and his wife signed a "conditional sale contract," which reserved title in the Kritzler Motor Company until the car was paid for. It recited a cash payment of $612 and 18 deferred monthly payments of $80.42 each. The purchaser took possession and as-sumed the risk of ownership; the contract provided for repossession by the seller if payments defaulted, or the car was used for illegal purposes, or if the seller deemed himself insecure, and other provisions common to chattel mortgages, except that the buyer waived any right to accounting for the proceeds in case the car was repossessed and sold.

The dealer assigned this contract to the intervener, for full value, warranted the genuineness of this paper, and that the dealer had no knowledge of any facts which would impair the validity or value of the paper.

The question presented is: May the intervener recover this car, which was seized while being used by Humberd in his liquor business, under section 26 of title 2 of the National Prohibitory Law? 27 USCA § 40. The dealer, the original holder of the sale contract, had guilty knowledge; the intervener is innocent. It will be seen at once that the question is of first importance. It is important to the finance companies, for, if they cannot recover liquor cars, notwithstanding their personal innocence, they want to know it, so they can protect themselves against dealers by an agreement of indemnity in case the dealer is knowingly taking bootlegger paper; it is important to the government to know whether the forfeiture provisions of the liquor laws can be safely evaded by the simple device of selling the paper to an innocent person. No case in point has been cited.

It probably should be determined first whether the assignee of such paper is an "owner" or a "lienor." While what we are ultimately driving at is an interpretation of these words as used in the federal statute, the common acceptation of these contracts under the state law is persuasive. The Kansas statute has recognized these contracts, so far as to provide that they must be recorded as chattel mortgages (R. S. Kan. 1923, 58—314), and that the provisions of the chattel mortgage statute as to releases shall apply to such contracts (Id. 58—315). The Supreme Court of Kansas has held they are not chattel mortgages within the meaning of the criminal statute making it an offense to sell mortgaged property. State v. Webb, 105 Kan. 407, 184 P. 715. The Supreme Court of Kansas has also held that there is only a "theoretical, * * * but no practical," distinction between a conditional sale and a chattel mortgage (Christie v. Scott, 77 Kan. 257, 94 P. 214), and that the reservation of title in such a contract is "an incident to the

obligation to pay" (Nat. Bond & Investment Co. v. Evans, 118 Kan. 656, 236 P. 447), and that it is, "in effect, a chattel mortgage" (Minneapolis Mach. Co. v. Nash, 103 Kan. 871, 176 P. 628).

I am of the opinion that, whatever may be the precise classification of these instruments for other purposes, the holder of them is more nearly a "lienor" than he is an "owner." As a practical proposition, every one knows that they are taken to secure the payment of the balance of the purchase price; the buyer of the car can pay it at any time, and his ownership is complete. The contract itself puts all the risks of ownership on such buyer. Probably Congress used the word "lienor," instead of "mortgagee," in order to cover all transactions where, in truth and in fact, a lien was retained, whether by mortgage or conditional sale contract. The intervener himself considers his conditional sale contract a mortgage, just as every one does, for in his application he says that default has occurred in the "mortgage," and in his intervening petition describes himself as "the mortgagee," and refers to the entire amount of the "mortgage," and to the defendant as the "mortgagor"; that the intervener "has a bona fide lien," and prays for the balance of his "mortgage debt." With these allegations, it is a little late now to claim that there is no "mortgage" or "lien" involved.

█ The intervener urges the application of the Negotiable Instruments Law (Rev. St. Kan. 1923, 52—101 to 52—1901), which, as I see it, has nothing whatever to do with the case. The conditional sale contract is not a negotiable instrument. The intervening petition states that his claim is "by virtue of a conditional sales contract," and no mention is made of a note, although a note was introduced in evidence. Even if there were a negotiable note, secured by a chattel mortgage, the intervener could sue on the note and shut off certain defenses, but he could not make, and does not make, a negotiable promissory note the basis of his intervention. Moreover, we are not dealing with the rights of parties to paper as established by the Negotiable Instruments Law. The government has power to take liquor cars from anybody, and to put such limitations on the exercise of that power as it cares to. It is a harsh rule, but cannot now be questioned. The government could have excepted holders in due course of negotiable paper; perhaps Congress should have, but it did not. The question in this case, is: What did Congress except in section 26? On this inquiry, the Negotiable Instruments Law does not help. The

cases cited by the government, to the effect that the assignee of a chose in action takes it subject to defenses, is familiar law, but not particularly helpful in this case.

█ Congress has the constitutional power to confiscate liquor cars without consideration of the lack of knowledge of the owner. Van Oster v. Kansas, 272 U. S. 465, 47 S. Ct. 133, 71 L. Ed. 354, 47 A. L. R. 1044. It can prescribe what conditions it chooses on the rights of interveners. Now, what has Congress prescribed as to "lienors" getting their money out of confiscated cars? It has prescribed two conditions—that the intervener shall establish his lien (1) "as being bona fide; and (2) as having been created without the lienor having any notice that the carrying vehicle was being used, or was to be used, for illegal transportation of liquor," etc.

The intervener has complied with the first; but he has failed to establish that the lien was "created" innocently. The lien was not "created" when assigned to the intervener; it was "created" when the paper was signed; when it was "created," the then lienor knew the car was to be unlawfully used.

It may be urged that the "lienor" referred to means the assignee; but it is difficult to account for the use of the word "created," rather than "acquired." The case is not free from doubt, but it is not easy to assume that Congress intended to afford such a simple and safe device to evade the whole policy of the seizure statute.

If the intervener is considered the "owner," the same end would be reached. An owner can recover his car "for good cause shown." Several courts have said that an owner's right to recover his car is not as good as a lienor's, because the "owner" has closer control over it. U. S. v. Montgomery (D. C.) 289 F. 125; U. S. v. Kane (D. C.) 273 F. 275; U. S. v. Shaw (D. C.) 272 F. 491; U. S. v. One Dodge Coupé (D. C.) 13 F.(2d) 1019. Whatever may be the law as to that particular question, if the intervener is an owner, I could not find that it has shown good cause for recovery of the car, when it did not even make enough inquiry to ascertain that Smith was really not the purchaser, had never had possession of it at all, and had never made a payment on it. The record shows the sale to Humberd in April, and the car seized in September. An "owner" ought to know who has his car for five months, and does not show good cause by simply saying: "I didn't know that man, whom I knew to be a bootlegger, had had my car for

five months." This circumstance, alone, proves to our common sense that the intervener was really not an "owner," as contemplated by the federal statute, but was in fact a "lienor."

It is strongly urged that such a conclusion is offensive to all our ideas of property rights; that to deprive a citizen of his property by force of law, when he is entirely without blame, is subversive of our conception of government; and that, each time such action is taken, the enemies of the prohibitory law find another recruit; that those in sympathy with the law ought to be engaged in making friends for the law, instead of enemies. However much such considerations may appeal to the court as an individual, they do not fall within his official domain, since it has been decided that Congress may constitutionally attach guilt to the "thing," rather than its owner, and may engraft upon our system the Hebraic theory of fixing responsibility upon the ox that gores, irrespective of the ownership. Congress has exclusive domain over considerations of policy.

The relief prayed for will be denied.