## THE HARBOUR TRADER.
### No. 358.

Circuit Court of Appeals, Second Circuit.
June 30, 1930.

Louis Halle, of New York City (Milton R. Kroopf, of New York City, on the brief), for claimants.

Howard W. Ameli, U. S. Atty., of New York City (Herbert H. Kellogg and Albert D. Smith, Asst. U. S. Attys., both of Brooklyn, N. Y., and J. Bertram Wegman, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The British ship, Harbour Trader, was seized by the United States Coast Guard in December, 1928, about 2½ miles south of East Rockaway Inlet, in the Eastern district of New York, with a cargo of intoxicating liquor on board. Four members of the crew were arrested and charged with possession and transportation of the liquor in violation of the National Prohibition Act tit. 2, §§ 3, 26 (27 USCA §§ 12 and 40). To this charge they pleaded guilty and were sentenced. The liquor was not then ordered destroyed or the vessel ordered sold. Thereafter a libel for forfeiture of the vessel and cargo was filed in the District Court. The grounds of forfeiture alleged were: (1) The unlawful possession of intoxicating liquor fit for beverage purposes; (2) the unlawful transportation of the liquor; (3) the conviction of the persons in whose possession it was found. The last ground only, based on 27 USCA § 40, need be noticed. The Standard Steamships Company, Limited, of Halifax, Nova Scotia, appeared as claimant for the vessel and St. Pierre Trading Company as claimant for the cargo. Their answers were general denials with separate defenses of no knowledge, acquiescence, or participation in the illegal business. That the liquor was brought in contrary to the National Prohibition Act is, however, not now denied.

The first question presented is whether the court had jurisdiction to entertain a libel for forfeiture of the vessel and cargo under 27 USCA § 40, or whether such forfeiture must have been had, if at all, in the criminal proceeding in which the pleas of guilty were entered. The pertinent part of the act follows: "* * * The court upon conviction of the persons so arrested shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized * * *."

It is thought that this gives jurisdiction to act solely and exclusively to the court in which the criminal proceeding was pending and that by some theory of strict construction the words "upon conviction" must mean that jurisdiction to order the liquor destroyed or the property sold is irretrievably lost unless action to that end is taken at once upon conviction as an integral part of the criminal cause. Support for this narrow theory of jurisdiction, based on technicalities of procedure, is claimed in the failure of Congress to provide expressly for proceeding by way of libel against the res which is in the custody of the seizing officer in the criminal action. Recognizing that there is some room for a possible conflict of authority in this regard, it is but a mere possibility not reasonably to be expected or, so far as we know, as yet encountered. Such a remote contingency may well await the time when, if ever, it does arise and for the present yield before the inherent power of the court to conduct its business according to procedure, not plainly contrary to the statute or established rules of law, which will in its sound judgment best promote the administration of justice and accomplish what Congress has provided shall be done. Without meaning to intimate that the court in the criminal cause could not have proceeded in a summary way, after due notice to parties in interest, to order the destruction of the liquor and sale of the vessel, we entertain no doubt of the jurisdictional power of the same judge sitting as a court to act upon a libel filed for that purpose. To hold that another judge of the district would not have equal power to act upon the question of good cause or destruction of the liquor because of some fancied right on the part of the owner to have the court pronounce its decision through the medium only of the judge who happened to preside in the criminal action would be to read into the statute after the word "court" words of limitation like "acting only through the judge who actually presided when conviction was had." Since the showing of good cause presents a new issue involving the rights of those who do not necessarily have any notice of

the criminal action and especially where there is no reason to believe that the procedure adopted changed the result in the slightest, no good purpose is served by splitting hairs over phantom rights at the expense of what is so obviously just to all concerned. We think the substantial rights of all parties were carefully preserved, and that, in the absence of a certain and exclusive method of procedure provided by Congress, the purpose of the statute was lawfully carried out by proceeding upon a separate libel for forfeiture instead of in a summary way in the criminal cause. We are not surprised that this point has apparently never been raised before, and find nothing in United States v. One Ford Coupé, 272 U. S. 321, 47 S. Ct. 154, 71 L. Ed. 279, 47 A. L. R. 1025, or in Port Gardner Investment Co. v. United States, 272 U. S. 564, 47 S. Ct. 165, 71 L. Ed. 412, upon which the appellants rely, contrary to the conclusion we have reached.

On the merits, no time need be taken with the validity of the seizure of the vessel or the contraband nature of the cargo. That is not questioned. But the owner of the ship as claimant insisted upon its innocence of any intended or actual unlawful use of the vessel. It claimed to have chartered the boat to John L. Stuart of Montreal by a charter party dated in October, 1928. This charter was "for about six months" from the time of delivery, and the president of the owner testified by deposition that delivery was made May 1, 1928. The seizure was over seven months after such delivery. He also testified that the master, who was employed by the owner, was instructed "to do nothing which would endanger the ship" and be governed by the charter party. The claimant left the record blank regarding its knowledge of Stuart or his business. Its president was asked if it had any knowledge or reason to suspect that the vessel was to be used in the violation of the National Prohibition Act, and answered in the negative. No facts appeared to indicate what it did have reason to suspect in this regard, if anything, and his answer as to reason to suspect was nothing but the conclusion of the witness, without giving the court any means of knowing on what the conclusion was based.

When seized, the boat was equipped with tin discs to cover the portholes as an aid to navigating without being observable at night, had removable name plates bearing the names, respectively, Harbour Trader, Potomac, and Potomac Norfolk, Va., and was fitted out with skids, but the owner made no attempt to show that this equipment had been put on the boat after its delivery to Stuart. The only evidence about when it was so equipped came from a government witness, whose testimony indicated that the boat had been built that way. Moreover, it appeared that the Harbour Trader had cleared from the port of Liverpool, Nova Scotia, on May 2, 1928, July 26, 1928, August 28, 1928, September 22, 1928, October 25, 1928, and November 24, 1928, each time in ballast. Whenever she returned to Liverpool her captain reported to the collector of customs there. These reports show that the boat was engaged in transporting liquor to various points unknown to the shipper. Some of this liquor had been delivered to small boats at sea, and it did not appear where all of the rest had been taken. All in all, we have at best the owner at Halifax, Nova Scotia, who chartered the boat to a man in Montreal, about whom it has seen fit to disclose nothing but his residence, seeking, wholly by the assertion in the deposition of its president, that it neither knew or had reason to suspect that the vessel was or would be used in violation of the National Prohibition Act, to show good cause for nonforfeiture, after it appeared that it had carried liquor repeatedly to undisclosed destinations and then was caught in territorial waters near New York fitted out for rum running with a cargo of liquor on board. Such flimsy proof of the owner's innocence of the business being done by the chartered boat would appeal only to the most credulous. If this charter had been more than a subterfuge or John L. Stuart more than a name, it is hard to believe that the owner would have risked forfeiture without introducing some more convincing proof of its innocence. However that may be, the judge failed to find that the owners had shown good cause why the liquor should not be destroyed and the boat sold. The evidence warranted nothing else, for the burden was on the owners. Shelliday v. United States (C. C. A.) 25 F.(2d) 372.

Judgment affirmed.