# UNITED STATES v. ONE BUICK COUPÉ AUTOMOBILE·(GENERAL MOTORS ACCEPTANCE CORPORATION, Intervener).

District Court, D. New Hampshire.
April 16, 1932.

Raymond U. Smith, Dist. Atty., of Concord, N. H., and Dixon Vancore, Asst. U. S. Atty., of Tilton, N. H.

William F. Byrne, of Tyler, Eames, Wright & Hooper, of Boston, Mass., for General Motors Corporation.

MORRIS, District Judge.

This is a libel for the forfeiture of one Buick coupé, in which proceeding the General Motors Acceptance Corporation has filed an intervening petition for the allowance of a lien on the car.

The parties stipulated that the files in the clerk's office might be considered by the court without being formally offered in evidence and marked as exhibits. I find the facts as follows:

On July 28, 1929, one William P. Treinish of Saranac Lake, N. Y., was apprehended in the town of Rindge, N. H., in the act of transporting a considerable quantity of intoxicating liquor in the Buick coupé which is the subject of this action.

Treinish was arrested, and the automobile seized by prohibition agents under section 26, title 2, of the National Prohibition Act (27 USCA § 40).

He was taken before a United States commissioner on July 29, 1929, and bound over for appearance at the September term of United States District Court to be holden at Concord. Bail was fixed in the sum of $2,000, and furnished by one Abe Green of Manchester, N. H. On September 4, 1929, an indictment was returned against Treinish by the grand jury charging him with the illegal transportation of intoxicating liquor. The respondent was arraigned September 9, 1929, and entered a plea of not guilty. At that time, bail in the case was raised from $2,000 to $3,000, which was furnished.

On September 19, 1929, the respondent was called for trial but failed to answer, and his bail was forfeited and subsequently collected. A capias was issued, but Treinish could not be apprehended. Later, on May 11, 1931, Treinish was apprehended in Rutland, Vt., and turned over to the federal authorities in New York state to answer to a charge of conspiracy and bribery of customs officers. On August 1, 1931, he was convicted and sentenced to four months in

the Broome county jail, and to pay a fine of $1,000. He was released from that institution January 1, 1932, taken before a commissioner on January 6, and bound over in the sum of $5,000, for his appearance before this court on January 15, 1932. On that date he failed to appear, and his bail and surety were called and defaulted. On January 26, he was surrendered in court by his surety, the Lexington Surety & Indemnity Company of New York. He was set for trial before a jury January 28, and a verdict of guilty was returned against him on January 29, 1932. On February 26, 1932, he was sentenced to three years in the Atlanta Penitentiary, and to pay costs.

The indictment under which he was convicted and sentenced alleged a third offense. The first offense alleged was committed in the district of Vermont upon which he was convicted August 15, 1921, and paid a fine of $1,000. The second offense was committed in the district of New Hampshire upon which he was convicted January 4, 1927, and sentenced to ninety days in Belknap county jail, which he served. Such are the known activities of William P. Treinish taken from the records.

The Buick coupé in question was purchased by Treinish May 22, 1929, from the Saranac Buick Company, 12 Depot street, Saranac Lake, N. Y. In a purchaser's statement filed with the company by Treinish, he gave his address as Hotel Saranac, Saranac Lake, N. Y., and stated that he had lived there for a year and a half; that his previous address was 17 Paul street, Boston, Mass., where he had resided for three years; that his occupation was a broker, and that he had an income of $800 per month; that his total monthly expenses was $400; that he had a checking account with the First National Bank of Boston; that he had credit dealings with the Cadillac Automobile Company and Paine's Furniture Company of Boston. He gave their names as business references. For a personal reference he gave the name of Frank Burke of Bloomingdale, N. Y.

The price of the automobile was $1,693, of which $605 was paid before delivery and the remainder to be paid at the rate of $94 per month in accordance with a conditional sales agreement entered into between the parties on the 22d day of May, 1929.

The conditional sales contract was assigned by the Buick Company to the General Motors Acceptance Corporation, but upon what date the assignment was made does not appear.

After seizure the car remained in the custody of the United States in storage at Clark's garage in Concord, N. H., where it was taken by prohibition officials. On January 18, 1930, the District Attorney filed a libel against it setting forth the seizure; the fact that Treinish had not been convicted; that the cost of storage already amounted to the sum of $28.05; and that costs were constantly accumulating, and that the car was depreciating in value. The prayer of the libel was that said automobile be ordered sold at public auction to pay the costs of seizure and storage, and that the proceeds, after payment of such costs and expenses, be paid into the hands of the clerk of court for such further disposition as the court might order, and for such other and further relief as the court might deem proper.

On January 22, 1930, General Motors Acceptance Corporation filed an intervening petition setting forth the sale of said automobile by the Saranac Buick Company to Treinish under a conditional sales contract; that said sales contract was assigned to the General Motors Acceptance Corporation; that two payments of $94 each had been made on the contract since the assignment; and that the balance thereunder was due to the intervener. The intervener further alleged that it did not at any time know or have any reason to believe that said automobile was to be used or was used by said Treinish or any other person or persons in violation of the National Prohibition Act.

The prayer in the intervening petition was that the automobile be returned to the intervener; that the libel be dismissed upon payment by the claimant of all charges incurred for storage; and that the lien of the intervener amounting to $900 be established if any entry of forfeiture was declared by the court.

On June 6, 1930, the General Motors Acceptance Corporation filed a bond in the penal sum of $900, and took possession of the automobile. The essential parts of the bond are as follows:

"Whereas said automobile is now in storage in Concord within the District of New Hampshire, and the United States Attorney for said District and the attorneys for the claimant, General Motors Acceptance Corporation, are apprehensive that serious loss will be suffered through depreciation and accrual of storage charges pending the conviction of William P. Treinish and the institution of forfeiture proceedings against said automobile;

"Now, therefore, the condition of this obligation is such that if the said General Motors Acceptance Corporation shall abide by the decision of said United States District Court for the District of New Hampshire relating to any forfeiture proceedings instituted against said automobile or the penal sum of this bond in lieu of said automobile, and in case said General Motors Acceptance Corporation fails or is unable to establish its lien in said forfeiture proceedings and said automobile is declared forfeited, then said General Motors Acceptance Corporation shall pay or cause to be paid to the United States of America the aforesaid sum of $900 together with all costs, statutory and otherwise, assessed in said forfeiture proceedings, without fraud, coven or delay, and then the above obligation shall be void, otherwise to remain in full force and effect." (Signed.)

On March 22, 1930, the depositions of B. A. Hartman, representing the Saranac Buick Company, and Edgar Levesque, representing the General Motors Acceptance Corporation, were taken at Albany, N. Y., at the request of the intervener. These depositions were taken for the purpose of establishing the bona fides of the conditional sales contract and the lien of the General Motors Acceptance Corporation thereunder. The depositions were filed with the clerk of court, May 2, 1930.

From the time of the filing of these depositions down to the time of the apprehension and conviction of Treinish the entire matter remained in abeyance.

On April 14, 1932, after the conviction and sentence of Treinish, the District Attorney filed an amendment to the original libel setting forth the conviction of Treinish and praying that the automobile be forfeited to the government.

From the testimony of Benjamin A. Hartman, a bookkeeper for the vendor, it appears that the Saranac Buick Company is engaged in the sale of automobiles, and that the car in question was sold to William P. Treinish for $1,693; that there was a down payment of $605; and that the conditional sales contract for the balance was assigned to the intervener. The witness testified that the sale was brought about through a Mr. Burke who called the witness and told him that he was sending Treinish, who was a friend of his, over to buy a car, and that he was a very good account. He testified that Treinish appeared and the negotiations for the sale were conducted by Edward Mc-

Grath, owner of the business. It does not appear that witness had anything to do with making the sale. He testified that he first met Treinish in October, 1928; that he knew that he lived at Saranac Lake Hotel; that he did not know he was a bootlegger; that he supposed he was a broker; and that Mr. Burke was a reputable business man who conducted a restaurant and accommodations for tourists. So far as witness knew the only reference that was contacted before making the sale was Mr. Burke with whom Mr. McGrath had a telephone communication when witness was present; but what was said does not appear. This is the only investigation made prior to the sale. The acceptance corporation does not claim to have made any investigation of Treinish, but relied upon the prior satisfactory business relations it had had with the Saranac Buick Company.

In so far as appears in the testimony, intervener had no knowledge of Treinish's prior activities as a bootlegger, and I find it had no reason to believe that Treinish was engaged in the business of transporting liquor in violation of law; but what is a very significant fact is that Edward J. McGrath, owner of the automobile company, although at his office the day the depositions were taken, did not appear as a witness, and, upon the hearing before the court in Concord, counsel for the intervener stated orally that he had requested the presence of McGrath to testify before the court, but that McGrath had not appeared and that counsel did not expect he would. When inquired of if counsel desired a postponement of the case, counsel stated he did not.

It appears that the bookkeeper had known Treinish six months prior to the sale of the car, but there is not a word to show how long McGrath, who conducted the sale, had known him or what their relations were.

### Law.

Section 26 of title 2 of the National Prohibition Act (27 USCA § 40) provides that: "Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the vehicle and team or automobile * * * or any other conveyance, and shall arrest any person in charge thereof. * * * The court upon conviction of the person so arrested, shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized, and the officer making the sale, after deducting the expenses of keeping the property, the fee for the seizure, and the cost of the sale, shall pay all liens, according to their priorities, which are established, by intervention or otherwise at said hearing or in other proceeding brought for said purpose, as being bona fide and as having been created without the lienor having any notice that the carrying vehicle was being used or was to be used for illegal transportation of liquor, and shall pay the balance of the proceeds into the Treasury of the United States," etc.

As I construe section 26, the burden is upon the lienor to establish that his lien is bona fide and that it was created without his having any notice or reason to believe that the carrying vehicle was being used or was to be used for the illegal transportation of liquor.

The words "having been created" refer to the date of the inception of the lien. The good faith of the parties and lack of knowledge or reason to apprehend on the part of the vendor that the vehicle upon which the lien is taken or reserved will be used in violation of law must be established as of the date of its creation. This burden of proof is equally incumbent upon the assignor and the assignee of the lien, whichever is claiming rights under it. Missouri Inv. Corporation v. United States (C. C. A.) 32 F.(2d) 511; United States v. One Dodge Coupe (D. C.) 13 F.(2d) 1019; Shelliday v. United States (C. C. A.) 25 F.(2d) 372.

In the instant case the burden was upon the intervener as assignee of the conditional sales contract to convince the court, not only that it is the bona fide owner of the lien, but that it was also ignorant of the bootlegging activities of Treinish. I find that these two facts are sufficiently established. There is no evidence from which I can find that the intervener had any guilty knowledge that the automobile was used or likely to be used in violation of law. But under the statute the good faith of its assignor must be established as of the time when the lien was created, which of course was before its assignment to the intervener. Under the assignment, the intervener has only such rights as the vendor had at the time of the sale. It can recover only upon the strength of its assignor's title. In other words, it steps into his shoes. The conditional sales contract was not a negotiable instrument. United States v. Orton (D. C.) 43 F.(2d) 259; United States v. Humberd (D. C.) 30 F.(2d) 413. If the

good faith of the vendor cannot be established, the lien is not proof against confiscation in proceedings brought for the forfeiture of the automobile by the government under section 26. United States v. Humberd, supra; United States v. Bailey (D. C.) 42 F.(2d) 908; United States v. Masters (D. C.) 264 F. 250; C. I. T. Corporation v. United States (C. C. A.) 40 F.(2d) 825; The Harbour Trader (C. C. A.) 42 F.(2d) 858.

Counsel for the intervener cites Shelliday v. United States (C. C. A.) 25 F.(2d) 372; United States v. One Nash Coupe (D. C.) 48 F.(2d) 653; Manufacturers' Finance Co. v. United States, 59 App. D. C. 361, 41 F.(2d) 984; United States v. Allen (D. C.) 31 F.(2d) 325; United States v. One Nash Coach (D. C.) 39 F.(2d) 245; Byroad v. United States, 59 App. D. C. 105, 35 F.(2d) 875.

From an examination of the cases cited by counsel representing the different interests, the general principle seems to be recognized that where an automobile is sold in good faith under a conditional sales contract, without knowledge on the part of the seller or of the assignee of the contract, or reason to believe, that the car would be used at any time for the illegal transportation of liquor, and where the car will not bring more than the unpaid balance of the purchase price, the assignee of the contract is entitled to restoration thereof in forfeiture proceedings, since "good cause" for its return is shown under the National Prohibition Act (27 USCA § 40). But if the car will bring more at public auction than the balance due on the conditional sales contract, then under the conditions outlined the holder of the lien is entitled to have it established as bona fide and receive payment from the proceeds of the sale after the payment of costs.

In the instant case the crux of the question is whether the intervener has sustained the burden of proof necessary to establish the good faith of the vendor of the car.

It is not controverted that Treinish had a wide reputation as a common bootlegger in the states of New Hampshire, Vermont, and Massachusetts. It is not shown whether this reputation extended into New York state; neither is it shown that it did not. It does appear in evidence that for a year and a half he lived at the Saranac Lake Hotel in the same city of only about 5,000 inhabitants in which the Saranac Buick Company was located, and that while living there he was transporting liquor from some point into the state of New Hampshire.

While I am not prepared to go as far as the court did in the case of United States v. Bailey, supra, and hold that the seller of an automobile or a finance company purchasing a conditional sales contract on an automobile must search the public records to ascertain whether the prospective purchaser of the car is a good moral risk under section 26 of title 2 of the National Prohibition Act (27 USCA § 40), I do hold that in such instance, if the vendor had any reasonable grounds to believe that his prospective purchaser is engaged in the violation of the National Prohibition Act, he cannot close his eyes, but will be charged with whatever knowledge would be gained had he made a reasonable inquiry.

Each case must be judged by the facts and circumstances connected therewith, and no positive rule of law can be laid down to guide the court more than to say that the question is always a question of fact. I have in every instance, so far as I can recall, insisted upon hearing the testimony of the individual who negotiated the sale before determining the validity of a lien.

In the instant case, the sale to Treinish was negotiated by McGrath, who was the owner of the business. He did not appear when the depositions were taken; neither did he appear in court when the case was heard. Upon familiar principles of law the court can reach but one conclusion; namely, that he knew his evidence would not help intervener's case if given. There is no evidence before the court from which I can determine the extent of McGrath's knowledge and business relations with Treinish. In the absence of such testimony, the intervener has failed to sustain the burden of proof which the law casts upon him.

The lien of the intervener is disallowed. A draft decree for the forfeiture of the Buick coupé may be presented for the court's signature.

One more point requires consideration, and that is the intervener's bond. Owing to the uncertainty of apprehension and conviction of Treinish [see United States v. One Cadillac Town Car, 57 App. D. C. 183, 18 F.(2d) 1005, 1007], and the lapse of time the bond offered and accepted by the government is not the usual bond provided in section 26, in double the value of the automobile conditioned on its return on the day of trial; it is a bond providing for the pay-

ment of $900 provided the intervener fails to establish his lien in the forfeiture proceedings. As the bond is filed in and is a part of the forfeiture proceedings, I see no reason why the plaintiff is not entitled to a decree for the payment of $900, with costs against the intervener and its surety on the bond. It is so ordered. It is further ordered that out of the $900 there should be first paid the expenses of seizure and storage and any other legitimate costs incurred, and the balance paid into the Treasury of the United States. See United States v. One Dodge Coupe (D. C.) 13 F.(2d) 1019.

This order is to be included in the decree of forfeiture.